Terrance BESAW, Plaintiff-Appellant, v. La Verne BESAW, Defendant-Respondent.

Supreme Court

*No. 76-648. Submitted on briefs March 28, 1979.—*
*Decided May 30, 1979.*
(Also reported in 279 N.W.2d 192.)

For the appellant the cause was submitted on the brief of *James F. Pressentin* and *Berk, Pressentin, Hoida & Berk* of Green Bay.

For the respondent the cause was submitted on the brief of *John M. Williamson* and *Van Laanen & Williamson* of Green Bay.

DAY, J.   This is an appeal from an order of the county court entered October 20, 1976 nunc pro tunc to September 27, 1976, finding Terrance Besaw, the appellant, in contempt of court for failure to pay alimony and attorney fees pursuant to a judgment of divorce entered June 5, 1975.  Notice of appeal was filed October 21, 1976.

The question on appeal is: In determining ability to pay as a defense to contempt for failure to pay alimony, did the court commit error in refusing to take account of the husband's obligation to support a minor child of the second marriage?

Terrance and La Verne Besaw were divorced pursuant to a judgment granted June 5, 1975, by the county court for Brown County.  The parties were married in 1941. Terrance Besaw who was fifty-seven at the time of the divorce works for American Can Company in Green Bay,

taking home an average of $335 every two weeks. La Verne Besaw, age fifty-five at the time of the divorce, has never worked, has no training or skills, does not drive, and has made no attempt to find work. Her monthly living expenses are $326.57. The parties have no minor children.

Mrs. Besaw was granted a legal separation on April 24, 1975 nunc pro tunc April 6, 1970, by the family court branch of the county court for Brown County. Under this judgment, Mr. Besaw was ordered to pay her alimony of $137 every two weeks. Mrs. Besaw received the household furnishings and appliances as well as a $3,351 lien on the homestead. He received the automobile, his retirement fund, and the homestead, subject to the wife's lien. He was to make the mortgage payment of $128 per month including taxes and to pay off the lien at the rate of fifty dollars per month. He was also ordered to contribute $300 toward his wife's attorney fees in the action.

Mr. Besaw then sought a divorce on the ground of separation for one year pursuant to the legal separation. The divorce judgment was granted on June 5, 1975 nunc pro tunc December 5, 1974. Under the judgment of divorce, he was ordered to pay alimony of $327 per month to her until she was eligible to collect social security on his account. He was also ordered to contribute $300 toward his wife's attorney fees.

Mr. Besaw fathered a child born to Vera Bockin on August 20, 1966. After his divorce, he married the mother of his child. The trial court was aware of the existence of the child at the time of the divorce.

Mr. Besaw was found in contempt of court for an arrearage of $277 representing alimony due on the legal separation judgment, following a hearing on June 6, 1975. Following a hearing held July 14, 1975, he was also found in contempt for an arrearage of $301 under the divorce judgment.

On July 26, 1976, Mr. Besaw made a motion to reduce the amount of alimony under the divorce judgment. In his affidavit, he stated that his obligations had increased and that he was unable to meet the payments. At the hearing, held August 23, 1976, he testified that he had been transferred to a new position at American Can Company and that he no longer had the opportunity to work overtime. However, his take home pay at that time was approximately $335 every two weeks, slightly higher than at the time of the earlier contempt proceedings. He testified that he had remarried on July 6, 1976 and had a minor child and a second wife to support. This child was born prior to the divorce and was known to the trial court.

Vera Besaw, Mr. Besaw's second wife, has two minor children. She receives $163 per month in social security for Ronald, age sixteen, who is not Mr. Besaw's child. The social security payments cease when Ronald reaches age eighteen unless he goes on to school. Vera Besaw received Aid to Families With Dependent Children (AFDC) for the children up to June or July, 1975. She works as a part-time babysitter in a bowling alley during the season from September to May each year. She makes thirty to thirty five dollars per week. She had had back surgery in the past, and may require future surgery to alleviate her back problem. She has no other property or source of income, other than what she receives from her husband.

There was testimony that Mr. Besaw holds the homestead in joint tenancy with Mr. Burton Kainz. The home, which was awarded to Mr. Besaw in the property settlement, is a duplex. There was also testimony that there was little market for the property unless the whole duplex was put up for sale. Mr. Kainz testified that he had offered to purchase Mr. Besaw's interest at the time of the divorce, and that he would currently purchase it

for $14,000 to $15,000 over and above the mortgage. The record indicates that Mr. Besaw had $10,000 net equity in the duplex at the time of the divorce.

The court found that there was no substantial change of circumstances and denied the motion to reduce alimony. The court said that it could give no consideration to Mr. Besaw's obligations to his new wife and child in judging ability to pay alimony to the first wife. The court said that it could only leave Mr. Besaw enough money to live on as a single man.

On September 27, 1976, the court again found Mr. Besaw in contempt for failure to pay alimony of $425 and attorney fees of $300. The order was entered October 20, 1976, but the court stayed execution pending appeal.

The only order before the court on appeal is the order of October 20, 1976 finding Mr. Besaw in contempt for failure to pay alimony and attorney fees. The trial court consistently took the position that it could give no consideration to the fact that he had an obligation to support a minor child of the second marriage. Although the transcript of the divorce proceedings was not made part of the record on appeal, it is apparent that the trial court believed it was precluded as a matter of law from taking into account the existence of this child for purposes of determining ability of the husband to pay alimony. At the hearing on the motion to reduce alimony, the following exchange took place:

"*Q.* And you are now supporting this child?
"*A.* (Terrance Besaw) : I am supporting this child.
"*The Court:* We went into that when we tried the case thoroughly.
'*Mr. Williamson:* The child was born at the time of the hearing. . . .
"*The Court:* We went into that before. That's a child that existed when we tried the divorce. His obligation to her came first. That's what I recollect. . . .
"*The Court:* I cannot consider it anyhow. All I have to do is give him enough to live as a single man.

"*Mr. Pressentin:* Are you referring to those cases under 245.10?

"*The Court:* I am offering the general thing that's been the law as long as I remember. When I first got out of law school and tried divorces, the first family went on relief and the second family ate. Now it's changed. The cases are now clear I cannot consider any obligations he has growing out of his second marriage. I tell them that every time I grant a 245.10.

"*Mr. Pressentin:* There was no 245.10.

"*The Court:* I know I tell them what the law is. I can leave him enough to live as a single man.

"*Mr. Pressentin:* What about the child?

"*The Court:* That's secondary to her rights as alimony.

"*Mr. Pressentin:* Is that the Court's position.

"*The Court:* I think that's what the law is."

We conclude that the trial court was in error when it stated that as a matter of law it could not consider as an element of ability to pay, the obligation that the law imposes on Mr. Besaw to support his child. On the contrary, we hold that is one of the factors that must be considered. From the record before us it appears that obligation existed before the original judgment of legal separation was entered since the obligation to support a child born in or out of wedlock is made clear by sec. 52.05(1) and by sec. 52.055, Stats., created by Ch. 595, Laws of 1959.[1]

---

[1] "52.05. **Abandonment; Uniform Act.** (1) PENALTY. Any person who, without just cause, deserts or wilfully neglects or refuses to provide for the support and maintenance of his wife or child under 18 years (legitimate or born out of wedlock) in destitute or necessitous circumstances shall be fined not more than $500, or imprisoned not more than 2 years, or both. The parent of any child born out of wedlock who has made provision for the support of such child by giving bond, or by settlement with the proper officers in accordance with ss. 52.21 to 52.45, on which such parent is not in default, shall not be subject to this section. . . ."

"52.055. **Failure to support.** (1) Any parent who intentionally neglects or refuses to provide for the necessary and adequate sup-

This court stated in *Balaam v. Balaam*, 52 Wis.2d 20, 29, 187 N.W.2d 867 (1971) that a person may be held in contempt of court for failure to pay money only where the failure is willful and not the result of inability to pay:

". . . it has long been settled in Wisconsin that a person cannot be held in contempt of court for the failure to pay money unless the refusal is willful and contemptuous and not as a result of his inability to pay. [Citations omitted.] This was so held in a divorce case in which we said, 'Imprisonment [on contempt] should not be ordered when it is made to appear that the default is the result of an inability to pay.' *Howard v. Howard,* 269 Wis. 334, 337, 69 N.W.2d 493 (1955). See also: *Staples v. Staples,* 87 Wis. 592, 596, 58 N.W. 339 (1894). The essential finding in such a contempt must be that the defendant is able to pay or should be able to pay if he can work and will not and the refusal to pay is willful and with intent to avoid payment. 2 Nelson, Divorce and Annulment (2d ed.), p. 421, sec. 16.20; *In re. Adam's Rib, Inc., (Kaminsky),* 39 Wis.2d 741, 159 N.W.2d 643 (1968)."

port of his child under 18 years (legitimate or born out of wedlock), or any person who, without just cause, intentionally neglects or refuses to provide for the necessary and adequate maintenance of his wife, shall be guilty of a misdemeanor and may be fined not more than $100 or imprisoned not more than 3 months in the county jail, or both. The parent of any child born out of wedlock who has made provision for the support of such child by giving bond, or by settlement with the proper officers in accordance with ss. 55.21 to 52.45, on which such parent is not in default, shall not be subject to this section. Substantial failure by said parent or person to provide for such support or maintenance for more than 21 consecutive days immediately prior to the date when complaint is made under this section shall be prima facie evidence of intent hereunder; but this provision shall not preclude a prosecution hereunder for failure to support for a lesser time. Substantial failure by said parent or person to comply with any part of a court order under ch. 247 for support of any such child under the age of 18 years or for such maintenance of his wife shall be prima facie evidence of a violation of this section for prosecution hereunder. . . ."

■

In a contempt proceeding, the burden of proof is on the person against whom the contempt is charged to show his conduct is not contemptuous. *In re. Adam's Rib, Inc., (Kaminsky)*, 39 Wis.2d 741, 747, 159 N.W.2d 643 (1968). The findings of fact in a civil contempt will be sustained on appeal unless they are against the great weight and clear preponderance of the evidence. *State v. Balistrieri,* 55 Wis.2d 513, 524, 201 N.W.2d 18 (1972).

In this case, the trial court made the finding that Terrance Besaw's failure to make payments was the result of his willful disobedience.

■

This court has recognized that as a generalization alimony and support money are fixed on the basis of the needs of the wife and children and the ability of the husband to pay. The ability of the husband to pay is usually determined by his income, assets and debts, his age and health. *Balaam v. Balaam, supra,* 52 Wis.2d at 25.

■

In *Van Wyk v. Van Wyk,* 86 Wis.2d 100, 108, 271 N.W.2d 860 (1978), the court stated the factors to be considered by the trial court in setting alimony and property division: the length of the marriage, the age and health of the parties, the ability of the parties to support themselves, their liability for debts and the support of children, other circumstances such as misconduct, whether the property division is in lieu of or in addition to alimony, the amount of the wife's separate estate and the need to set aside property for the children's needs. For alimony the court is to specifically consider the needs of the wife and the husband's ability to pay.

In *Peck v. Peck,* 272 Wis. 466, 76 N.W.2d 316 (1956), the issue was whether the trial court had abused its discretion in relieving the husband of the obligation to

make further support payments for a minor son who had graduated from high school and gone on to college. The former wife had petitioned for an increase in support to meet college expenses. The husband pleaded inability to pay since his second wife was financially dependent upon him. This court found no abuse of discretion by the trial court, stating:

"While the support of the second wife should not be taken into consideration in determining the amount he should be required to pay for the support of his children by his former marriage until they complete their high-school education, it would not be an abuse of discretion for the trial court to consider such factor, together with others, in determining whether he should be required to continue such payments further." *Id.* at 471.

Remarriage by the husband had been given little consideration by courts in deciding petitions to adjust alimony. These cases generally arise in the context of changed circumstances, unlike the instant case where the minor child was already in existence at the time of the separation and later divorce. The rule is stated in *Gregory v. Gregory*, 52 Ill. App.2d 262, 268, 202 N.E.2d 139, 143 (1964):

"The remarriage of the defendant and a child by the second marriage does not present, in itself, a change of conditions suffficient to warrant a modification. Although the effect may be to deprive the second wife of support, from a legal standpoint, the first come first and the second come second. In other words, the first obligations must be met before the second obligations can or will be considered."

See also *State ex rel. Brown v. Brown*, 31 Wash. 397, 405, 72 P. 86 (1903) ; *Keim v. Keim*, 83 Colo. 277, 279, 263 P. 716 (1928) ; *Barrow v. Barrow*, 33 Ill. App.3d 654, 657, 342 N.E.2d 237 (1975) ; *Johnson v. Johnson*, 499 S.W.2d 268, 271 (Tenn. App. 1973) ; *Fortuna v. Fortuna*, 103 N.H. 547, 549, 176 A.2d 708 (1961).

However, there has been some relaxation of this view where the welfare of children of the second marriage is involved. It is stated in 2A Nelson, *Divorce and Annulment*, Sec. 17.12, pp. 65–67 (2nd Ed. 1966) :

"Remarriage of the husband is not absolute ground for a reduction of his alimony and support obligations to his former wife and children of his previous marriage. . . . The position generally taken by the courts is that he remarries at his own risk and his taking on the additional obligations of another family is not entitled to much judicial consideration with respect to his obligations to his former one. . . . Nevertheless most courts are not inclined to be too hard on an ex-husband where the welfare and support of a number of persons is dependent upon him, and the court may well consider his additional obligations and reduce those to his first family where it is obvious that he is having great difficulty in keeping up both establishments notwithstanding due effort to do so." (citations omitted).

In *Mark v. Mark*, 248 Minn. 446, 80 N.W.2d 621, 624–625, (1957), the Minnesota Supreme Court held that the trial court did not abuse its discretion when it gave consideration to the husband's child of the second marriage in reducing alimony:

". . . it is not to be overlooked that the subsequent remarriage of a divorced husband, as his own voluntary act, is not of itself a circumstance which justifies a revision of alimony. Despite many sweeping statements to the contrary a trial court obviously does not, and cannot, wholly ignore the needs of innocent children who are born of a divorced husband's remarriage. Their needs, especially where the children of the prior marriage have become self-sustaining and the divorced wife is capable of pursuing gainful employment, is a circumstance which may indirectly bear upon the propriety of a revision in alimony despite the fact that the father himself, by his voluntary act in begetting another family, is usually entitled to little judicial consideration when he seeks relief from the burdens of his former marriage. A trial

court's sound discretion in solving marital problems should not be shackled by rigid rules which prevent a recognition of the needs of innocent children whether they be born of a first or of a second marriage. Children born of the second marriage, like the children of the first, are not responsible for their existence and are equally dependent upon their father for support. . . . Consideration of the needs of such children does not mean that the necessities or wants of the first wife will be unreasonably curtailed or ignored. Several other c urts have been realistic enough likewise to recognize le rights of second-marriage children, as innocent thir parties, as a circumstance to be considered in passing upon an application for the revision of alimony."

In the instant case, the issue comes before the court, not on the question of changed circumstances justifying modification of alimony, but on review of contempt. La Verne Besaw, the first wife, argues that the issue of ability to pay was implicitly decided at the time of the original divorce hearing. Further, since the child was born before the divorce hearing, there is no change in circumstances, and thus the issue cannot be raised, either by motion to reduce alimony or by contempt. She cites the court to *Thies v. MacDonald,* 51 Wis.2d 296, 301, 302, 187 N.W.2d 186 (1971) which states:

"Though the doctrine of res judicata is not applied in its usual strictness when the question involves custody or support because the interests of children are involved, *King v. King,* 25 Wis.2d 550, 131 N.W.2d 357 (1964), policy still dictates that a decision made on a certain state of facts be given the effect of res judicata so long as that factual situation has not materially changed. *Chandler v. Chandler,* 25 Wis. 587, 131 N.W.2d 336 (1964)."

However, the court did note in a footnote to the section quoted above, "We do not here consider mistake or hardship." *Id.*

In *Kriesel v. Kriesel,* 35 Wis.2d 134, 150 N.W.2d 416 (1967), the husband's defense to contempt was the

arbitrariness of the original divorce judgment, which although arguably vulnerable to attack, was not appealed. In that case, the court said that the husband was precluded from collaterally attacking the judgment other than for fraud:

"Kriesel cannot defend himself in this proceeding by raising possible infirmities in the original judgment. Having failed to seek redress in appeal from the judgment, he is bound by it. His wilful refusal to obey an order based upon a judgment that is now beyond his power to challenge is contempt." *Id.* at 139.

In *Kriesel,* the defense asserted was the arbitrariness of the original award. In this case, the defense is inability to pay. Ability to pay goes to the heart of contempt, since this court has held that it is essential in contempt cases that the thing ordered to be done be within the power of the person. *Getka v. Lader,* 71 Wis. 2d 237, 247, 238 N.W.2d 87 (1976). The whole purpose of the hearing is to determine the ability to pay and the reason for the failure to pay the amount of money ordered. *O'Connor v. O'Connor,* 48 Wis.2d 535, 543, 180 N.W.2d 735 (1970).

Terrance Besaw did not appeal the original divorce judgment. Nor did he appeal the order denying his motion to reduce alimony. The only order appealed from is the order finding him in contempt.

We conclude that the issue of ability to pay raised by the finding of contempt is different than the issue of the amount of alimony awarded that could have been raised by appeals from the original divorce judgment or denial of the motion to reduce alimony.

Obligation to support children is one of the obligations to be considered in determining alimony. *Van Wyk,*

*supra,* 86 Wis.2d at 108. The obligation of a parent to support a child born in or out of wedlock is matter of public policy in this state as shown by secs. 52.05 (1) and sec. 52.055, Stats. (1975) cited, *supra.*

It was error for the trial court not to take into consideration the obligation of Mr. Besaw to support his child.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.