Diane M. EDWARDS, Plaintiff-Respondent,

v.

Robert EDWARDS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 78–307. Argued May 6, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 160.)

112

For the appellant-petitioner there were briefs and oral argument by *Lise Lotte Gammeltoft*, staff attorney for Legal Services of Northeastern Wisconsin, Inc., of Green Bay.

For the respondent there was a brief and oral argument by *Carl R. Fenwick* of Green Bay, attorney for Brown county child support agent.

HEFFERNAN, J.   Defendant Robert Edwards seeks review of an unpublished decision by the court of appeals which affirmed that portion of the circuit court's divorce judgment awarding child support.   On June 26,

1978, the trial court granted Diane Edwards an absolute divorce from Robert Edwards, awarded her custody of the couple's four children, and ordered Robert Edwards to pay $200 per month for child support.

The only issue on appeal is whether the trial court abused its discretion when it rejected the parties' stipulation regarding child support and set a higher level of support based on Robert Edwards' potential earning capacity rather than on his actual earnings at the time of the divorce hearing. Because we conclude that the trial court failed to make adequate findings regarding Robert Edwards' present ability to pay $200 per month in child support and because the record contains no evidence to support that amount, we reverse that portion of the divorce judgment respecting child support and remand for further proceedings consistent with this opinion.

Diane Edwards commenced a divorce action against her husband Robert Edwards on November 8, 1977.[1] The couple had been married approximately six and one-half years and had four children aged one, four, six, and seven.[2]

---

[1] Sometime before the commencement of the divorce action, at a date undisclosed by the record, Brown County brought a child support action against Robert Edwards. Robert Edwards was not required to pay any support as a result of that action. Because the parties do not contend that the prior support decision has any particular effect on the present action and because the record contains little information about that decision, we attach no weight to the possible significance of that decision on this review.

[2] A fifth child, the son of Robert Edwards and an unnamed woman, lived with Diane Edwards and the rest of the children, but, for reasons undisclosed by the record, was not involved in this case or considered by the trial court when it set the level of child support. Diane Edwards evidently agreed to care for the child and planned to formally adopt it so that the five children would remain together.

Prior to the final hearing in the divorce action, the Edwards stipulated to the terms of the divorce judgment. The stipulation provided that the custody of the four children should be awarded to Diane Edwards and that Robert Edwards should not presently be required to pay any child support. This provision was subject to the court's continuing jurisdiction to modify the child support provision.

A final hearing was held on June 26, 1978. Diane Edwards testified that she was twenty-six years old; that she was unemployed; that she was receiving $529 per month in AFDC payments; that the AFDC payments adequately covered her and her children's expenses; that she had a tenth grade education; that her last employment had been as a waitress approximately five years before the hearing; and that raising the young children was a full-time job for her. She further testified that her husband's income was poor and that it was "barely enough . . . to keep him going." She said that their marital problems were attributable, at least in part, to her husband being bothered by the fact that he was not earning enough to support his family.

Robert Edwards testified that he was twenty-seven years old and a high school graduate. He stated that he attended barbers school, that he was a qualified and licensed master barber and shop manager, and that for the past three years he had worked as a self-employed barber in Milwaukee. He reported that he had earned approximately $3,200 during each of the three years before the divorce hearing and that his business had not improved during that time. Robert Edwards lived at the back of the shop, but did not own the building. The value of the equipment he owned in his shop was approximately $300. Robert Edwards stated that, despite his meager earnings and the lack of improvement in his business, he wanted to stay with his own barbering busi-

ness because of the time he had spent in school and because he was "pretty sure that things [would] break."

The parents and children were all in good health at the time of the hearing. Neither parent filed a financial statement during the action.

At the conclusion of the testimony, the family court commissioner recommended that the court set a support payment of "at least $50.00 a month [for the] four children." The family court commissioner stated that there was no reason why Robert Edwards could not earn a higher income managing someone else's shop and that "three years is ample time for a man to try to go into business for himself."

The trial court adopted the parties' stipulation except for the child-support provision. The trial court ordered Robert Edwards to pay $50 per month in child support, which was the amount it thought the family court commissioner had recommended. The family court commissioner then clarified his recommendation as being $50 per month per child, and the court changed its order to require Robert Edwards to pay $250 per month in child support. However, after being reminded that the support order only involved four of the five children, the court revised the figure to $200 per month. The court ordered the support payments to commence on September 1, 1978, approximately two months after the hearing. Robert Edwards objected to the support order, stating that he would be unable to pay $200 per month.

Robert Edwards appealed the child support portion of the divorce judgment to the court of appeals, which affirmed the judgment. The court of appeals commented on the trial court's failure to make specific findings regarding the monetary needs of the children or the ability of Robert Edwards to pay. The court concluded, however, that the record supported the trial court's "implicit conclusion" that each of the four children needed

$50 per month and that Robert Edwards could provide that amount of support. The court of appeals then supplied its own "finding" that Robert Edwards "failed to exercise his capacity to earn in total disregard of his support obligations."

In the exercise of our appellate discretion, we granted Robert Edwards' petition for review.

Both parties acknowledge the rule that the level of child support must be established according to the needs of the custodial parent and children and the ability of the noncustodial parent to pay. *Besaw v. Besaw,* 89 Wis. 2d 509, 516, 279 N.W.2d 192 (1979) ; *Anderson v. Anderson,* 72 Wis.2d 631, 642–43, 242 N.W.2d 165 (1976) ; *Balaam v. Balaam,* 52 Wis.2d 20, 25, 187 N.W.2d 867 (1971). The criteria generally employed in making this two-fold determination is equally well settled :

"These needs are ordinarily established by a consideration of the wife's assets and income, her special needs, the age and health of both the wife and children and their customary station in life. The ability of the husband to pay is usually determined by his income, assets and debts as well as his age and health. These determinations are to be made upon the basis of the circumstances existing at the time of the divorce." *Anderson, supra,* 72 Wis.2d at 643.

The determination of child support rests within the sound discretion of the trial court and will not be overturned unless the trial court abuses its discretion. Proper discretion is exercised where the record reflects that the trial court considered the needs of the custodial parent and children and the ability of the non-custodial parent to pay using the rationale quoted above. *Dittberner v. Dittberner,* 54 Wis.2d 671, 676, 196 N.W.2d 643 (1972).

■

The record discloses no basis for the trial court's decision to set child support at $200 per month. The trial court made no attempt to ascertain the financial needs of Diane Edwards and the children nor the level of support from Robert Edwards which would be necessary to satisfy those needs. The court made no findings of fact pertaining to the question of child support. Indeed, the only indication in the record of the trial court's rationale for setting $200 per month as the required amount of support is the following colloquy between the court and the family court commissioner:

*"Court:* The Court finds the Stipulation reasonable, except for the child support. And in that instance would set forth—require that the judgment set forth fifty dollars per month beginning September 1st, 1978.

" . . .

*"Mr. Johnson:* Is that fifty per child? You said fifty dollars.

*"Court:* I understood your recommendation to be fifty dollars total. Are you saying fifty dollars per child?

*"Mr. Johnson:* Yes, that's what I am saying.

*"Court:* Well, all right, fifty dollars per child, which would be a total of two hundred and fifty-dollars.

*"Mr. Johnson:* Two hundred, there's only four children.

*"Court:* You're right, two hundred dollars."

The fact that the court changed the amount of support from $50 to $250 to $200 per month within a few moments indicates that it blindly followed the commissioner's recommendation without critically evaluating the factual basis for the recommendation. The exercise of discretion involves the process of reasoning from facts of record. *Perrenoud v. Perrenoud,* 82 Wis.2d 36, 49, 260 N.W.2d 658 (1978). The discussion between the court and the family court commissioner reflects arbitrariness rather than the proper exercise of discretion.

The only evidence introduced at the hearing which had any bearing on the financial needs of Diane Edwards and the children was that they received $529 per month in county AFDC payments. However, no evidence was introduced to indicate how much of that aid was needed for the support and maintenance of the four children involved in this action. Although $50 per child per month is not on its face an unreasonably high estimate of need, it nevertheless, on the basis of this record, is clearly an arbitrary figure.

While the absence of evidence pertaining to the children's need is indicative of the manner in which the trial court exercised its discretion in regard to the question of child support, the dispositive reason for our decision to reverse is the uncontradicted evidence that Robert Edwards was not earning enough income at the time of the hearing to enable him to make the $200 per month support payments. Robert Edwards was earning only about $300 per month at the time of the hearing, which, according to his wife, was "barely enough . . . to keep him going."

The argument accepted by the court of appeals in favor of the trial court's support decision and which is urged again on this review is that the amount was properly based on Robert Edwards' potential earning capacity rather than on his actual earnings. This argument is based on a misreading of *Balaam v. Balaam, supra,* wherein we discussed the limited context within which it is proper to examine the non-custodial parent's potential earning capacity. We stated that:

"A divorced husband should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities even though he might for the present, at least, be working for a lesser financial return. This rule is, of course, subject to reasonableness commensurate with his obligations to his children and his former wife. We adopt the language of the North Carolina court as set forth in *Conrad v. Conrad, supra:*

" 'The award should be based on the amount which defendant is earning when alimony is sought and the award made, if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably. . . .

" 'To base an award on capacity to earn rather than actual earnings, there should be a finding based on evidence that the husband was failing to exercise his capacity to earn because of a disregard of his marital obligation to provide reasonable support for his wife. . . .

" '. . . If they are to exceed [the amount justified by actual earnings], there should be specific findings that defendant is not fairly and diligently conducting the business which he has selected as appropriate to earn a livelihood for himself and his wife.' " *Balaam, supra,* 52 Wis.2d at 28.

*Balaam* presented the more common question[3] of whether the husband was intentionally shirking his marital-support obligations where it appeared that he was earning less at the time of the divorce hearing than he had earned in previous years. We held in *Balaam* that the trial court's consideration of the husband's earning capacity, rather than his actual earnings, was improper because there was no finding—nor even a basis for a possible finding—that the husband was not "fairly or diligently working at the occupation which he [was] best suited for, nor that he [was] willfully accepting employment and resultant lower compensation for the purpose of reducing his ability to pay alimony and support money." 52 Wis.2d at 28–9.[4]

[3] *See, e.g., Knutson v. Knutson,* 15 Wis.2d 115, 111 N.W.2d 905 (1961) (husband left his well-paid medical practice for the express purpose of decreasing his earnings at the time of the divorce hearing in order to deflate the alimony award); *Annot.— Child Support Award—Excessiveness,* 1 ALR3d sec. 12 at 406.

[4] One justification for the requirement in *Balaam* that there must be a finding of intent to disregard support obligations before earning capacity rather than actual earnings can be used to determine the spouse's ability to pay child support is found in the law of contempt. Mere inability to pay child support cannot form the basis for a finding of contempt:

Similarly, this case reveals no evidence—and hence, in this record, no basis for a finding—that Robert Edwards, in his occupation as an independent barber, was not diligently working at the occupation for which he was best suited. There is no evidence that he reduced his efforts to defeat his obligation to support. There is no evidence to support the court of appeals' "finding" that Robert Edwards "failed to exercise his capacity to earn in total disregard of his support obligations." To the contrary, the record indicates that Robert Edwards was working in the profession for which he was trained and that his income in that profession had remained stable over the previous three years. There is no evidence that Robert Edwards was not striving to do well at his chosen vocation in order to avoid his marital obligations; indeed, his wife testified that he was upset by his failure to better support his family.

Moreover, there is no evidence to support what the court of appeals termed as the trial court's "implicit conclusion" that Robert Edwards' earning capacity as a barber was greater than the amount he was actually earning. While a $3,200 a year income is obviously low, no attempt was made to ascertain whether better barbering jobs were available to Robert Edwards and, if so, how much he could be expected to earn in such a job. Given the fact that the divorce hearing was held in Green Bay, it cannot be assumed, without corroborative evidence in the record, that either the trial court or the Brown county family court commissioner knew much about the employment opportunities available for black barbers in Milwaukee.

---

" '. . . it has long been settled in Wisconsin that a person cannot be held in contempt of court for the failure to pay money unless the refusal is willful and contemptuous and not a result of his inability to pay.' " *Balaam, supra,* 52 Wis.2d at 29; quoted with approval, *Besaw v. Besaw,* 89 Wis.2d 509, 516, 279 N.W.2d 192 (1979).

We are not prepared to hold, as the respondent's counsel urges us to do without any support in the record, that Robert Edwards has an earning capacity equal to the federal minimum wage. Such a determination would circumvent the need to examine the individual equities of each case. It would ignore, for instance, the fact that many people cannot find well paying jobs for reasons beyond their control or that many self-employed small businessmen, such as Robert Edwards, have difficulty developing a clientele when they start up a new business in a service field.

Accordingly, we hold that the trial court abused its discretion by setting child support payments at $200 per month. On remand, the trial court is directed to consider the financial needs of the children and the ability of Robert Edwards to pay. Robert Edwards' ability to pay must be measured by his actual earnings unless the trial court, using the standards of *Balaam, supra,* can, in light of the facts of record, find that his ability to pay is measured appropriately by his earning capacity.

*By the Court.*—Decision of the court of appeals and judgment of the circuit court reversed, and cause remanded for determination of support consistent with this opinion.

DAY, J. I dissent. I would affirm the court of appeals and uphold the award of $50 per child per month for the four children of the parties. I would hold that the trial court did not abuse its discretion in ordering the defendant to pay this amount. The trial court and this court can take judicial notice of the fact that it costs *more* than $50 each month to support each of these children. It should not take an elaborate "fact finding" procedure to reach a conclusion as obvious as this. The plaintiff, Diane M. Edwards, mother of four of his children, was receiving $529 in Aid to Families with De-

pendent Children (A.F.D.C.) per month in Brown county for the support of herself and the children.[1] Since the children in this case are not eligible for A.F.D.C. as long as there is an able-bodied father in the home, the couple in this case, with the stipulated consent of the mother, made the children eligible for A.F.D.C. through a divorce action.

This action was brought in her name by Brown county. The father was shown to be an able-bodied man, a high school graduate who graduated from Barber school with a master barber and shop manager's license. The majority says there was no "proof" that defendant could earn more than the $3,200 per year he claimed he had earned in each of the preceding three years running his own barber shop in Milwaukee.

The obligation to support one's children, however, is a basic one. Therefore, the burden of proof should be on the father in a case such as this to show he cannot pay the court ordered child support obligation.

This modest burden was not met by this defendant. All this record shows is a stubborn refusal on the part of this man to face up to his responsibilities; a refusal to even consider looking for more remunerative work to support his family. He was twenty-seven years of age at the time of the divorce and certainly it is hardly an "abuse of discretion" on the part of the trial court to order him to pay child support of $200 per month for four children. In my judgment, the rule should be "if you sire, you support" unless one can show a physical or mental inability to provide financial support or an absence of any employment opportunities. The defendant's four children by this woman were ages seven (born to the parties out of wedlock), six, four and one. The court

---

[1] It is not clear from the record if this amount was for the four children or also included another child of his that apparently lived with her.

also found that the defendant was "guardian and custodian" of a fifth child, age nine.[2] This accounts for the confusion by the trial court as to whether four or five children were to be involved in the support order. The mother testified:

"Q. . . . And I would ask that you tell the Court what acts of your husband you consider to be cruel and inhuman?

"A. Well, after we were married Bobby showed a lot of signs of immaturity. I guess you would call it. He come from a family that had pretty good money. And he couldn't accept the fact that when the children started coming, the money just wasn't there. And it bothered him, that he couldn't afford to support the family."

Despite the court's allowance of time to find other employment, this man has made no effort to try and get additional work or change jobs to meet the modest support obligation imposed by the court.

He has no compunction about leaving his children at the low support level afforded by the public assistance they are currently receiving and shows no willingness or desire to improve his own economic position in order to help his family. He is willing to let his children be added to the burden borne by the taxpayers to support the ever-increasing number of offspring whose fathers refuse and neglect to support them.

The defendant's arrogance in his insistence upon shirking his responsibility is no where better shown than in this exchange with the court at the time of the trial:

"*Mr. Edwards:* I would have to pay $250.00 per month?
"*Court:* $200.00 per month.
"*Mr. Edwards:* Well, I can't do it.

---

[2] According to the majority opinion at footnote two, page 113, that child is also the defendant's and the plaintiff in this case was planning to adopt that child.

"*Court:* Well, it may be that you will have to get another job, managing someone else's shop for a salary, or something like that. That is why we're setting it for September 1st, to allow you to have several months to make some adjustment.

"*Mr. Edwards:* I'm going to stick to what I'm doing.

"*Court:* That's your decision to make. Now you can pay that once a month, or twice a month, however, you wish to pay it.

"*Mr. Edwards:* I can't pay it at all. And that isn't what he said. He said $50.00 per month. But then he just thought it over, then he came up with the per child.

"*Court:* Well, we'll review it at the time. If you have made a sincere effort, and you can't make it, we'll consider that.

"*Mr. Edwards:* There's no possible way. I don't see it, there's no way, that I could see that.

"*Court:* Well, let's see what happens."

The trial court showed extreme patience under the circumstances.

The case of *Balaam v. Balaam,* 52 Wis.2d 20, 187 N.W. 2d 867 (1971), relied on by the majority can be distinguished. In that case, support and alimony was set by the trial court based on what the husband had previously earned working on a mink ranch for his parents. His wages had been cut from an earning capacity of $725 per month to $400 per month plus $175 worth of room and board. This court found from the record that the mink business had gone through a nation-wide slump, that pelts were selling for less than the cost of production, that the business had been losing $20,000 per year and that the brother, who also worked on the mink ranch, had a similar salary cut. This court concluded that the trial court should have based its order on the father's actual earnings at the time. The facts before us are a far cry from those in *Balaam.* Here we have, not a temporary set back due to outside economic forces in a going business, but the insistence on the part of the defendant that he will do nothing to increase his income

to meet even the obviously inadequate support ordered by the trial court.

One of the most egregious, glaring inequities in our social structure today is the determination and enforcement of child support obligations. The system is inequitable to the custodial parent—the mother in ninety-five percent of the cases. It is inequitable to the taxpayer who as divorce and illegitimacy rates soar pays for the support of children on the burgeoning A.F.D.C. rolls. And above all, it is inequitable to the thousands of children who often are forced to spend their entire childhood in homes supported at poverty level maintenance.

Among the multiple causes of the inequities in the child support system is the primary cause—a pervasive and gross irresponsibility on the part of fathers for the economic support of the children they have sired. According to a speech delivered on March 7, 1980, by Bernard Stumbras, administrator of the Division of Economic Assistance in the Wisconsin Department of Health and Social Services, before an audience of family court judges and family court commissioners attending the 1980 Family Law Seminar here in Madison, approximately one-quarter of the mothers on A.F.D.C. in Wisconsin are working and contributing $83.2 million per year to the support of their children. On the other hand, the fathers of these children on A.F.D.C.—*all* of the fathers—are contributing a total of only $28 million per year toward the support of their children. This means that one-fourth of the A.F.D.C. mothers in Wisconsin are contributing three times more per year than all of the absent fathers. If the fathers of A.F.D.C. children were contributing a sum equal to what the working A.F.D.C. mothers are currently contributing, from income earned at a rate of $3.45 per hour, the state would collect $333 million this year in child support. The A.F.D.C. annual cost in Wisconsin is $290 million. These are sobering figures, and offer clear evidence that neither the mothers

nor the Wisconsin taxpayers are being fairly treated, and that A.F.D.C. children are getting only crumbs from the presumed primary breadwinners—their fathers.

Mr. Stumbras pointed out that the A.F.D.C. mothers in Wisconsin who are working and contributing to the support of their children earn an average of $488 per month. These mothers contribute $222 more per month than the defendant admits to earning (based on a yearly income of $3,200). The court's award in this case requires the defendant to increase his earnings to an amount that is $22 less than working A.F.D.C. mothers contribute to the support of their children!

It is hardly an "abuse of discretion" for the court to ask the defendant to earn *less* than the average working A.F.D.C. mother earns and contributes to the support of her children. As this Court said in *Balaam*, 52 Wis.2d at 28:

"A divorced husband should be allowed a fair choice of a means of livelihood. . . . This rule is, of course, subject to reasonableness commensurate with his obligations to his children. . . ."

Perhaps the majority opinion will cause the legislature to consider taking the matter of child support and determination of ability to pay away from the divorce courts. Some courts are notorious for the inadequacies and wide-range of support orders. The legislature may decide to place the determination of support in the hands of an agency better versed in domestic economics than our over-worked trial courts and thus achieve greater uniformity, greater equity, and a concomitant decrease in the burden placed on the shoulders of Wisconsin taxpayers.

I am authorized to state that Mr. Justice William Callow and Mr. Justice John Coffey join in this dissent.