IN RE the MARRIAGE OF: Virginia A. VAN OFFEREN, Petitioner-Respondent,

v.

William L. VAN OFFEREN, Respondent-Appellant.†

Court of Appeals

*No. 92–0530. Submitted on briefs September 14, 1992.—Decided December 30, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Richard J. Rakita* and *Felicia S. Miller* of *Hiller & Frank, S.C.* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Rod J. Koenen* of *Stewart, Peyton, Crawford, Crawford & Stutt* of Racine.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J. William Van Offeren appeals from a trial court order denying his post-divorce motion to temporarily eliminate child support and maintenance. William primarily contends that the trial court erred when it determined that the reduction of income caused by his change of employment constituted "shirking." He also argues that the court abused its discretion by finding him in contempt for being in arrears on support and maintenance, by requiring him to satisfy the arrearage before his ex-wife had to return an overpayment made pursuant to their property division, and by requiring him to contribute to his ex-wife's attorney's fees.

Because William unreasonably reduced his income by voluntarily terminating his employment and starting his own business, we agree with the trial court's finding that William was shirking and that he was thus not entitled to a reduction of his child support or maintenance obligations. Because we also conclude that the

487

trial court did not abuse its discretion as to the additional issues William presents, we affirm.

## I. FACTS AND TRIAL COURT RULING

The historical facts are not in dispute. William and Virginia Van Offeren were divorced on March 15, 1989. At the time of the divorce, all four of the Van Offerens' children were minors. The trial court based its award of child support and maintenance upon William's earnings of about $45,000 a year as a division manager at S.C. Johnson, Inc. (Johnson Wax).[1]

After the divorce, William's relationship with management at Johnson Wax apparently deteriorated. He was reassigned from his position as a first-shift manager to a third-shift supervisor in the company's warehouse and was told that advancement within the company was improbable. Also, the third-shift supervisory position he was assigned to was scheduled for elimination within two years. William, however, could have remained on the third shift as long as his job performance remained acceptable.

William's disenchantment with his third-shift reassignment apparently led to Johnson Wax offering him a separation package as an inducement to leave by June 30, 1990. The package consisted of eight months salary plus the proceeds of an accumulated separations benefit plan.[2] Before accepting the package, William consulted with several employment counselors to explore moving

---

[1] The divorce judgment ordered William to pay $1178 or 31% of his gross income per month for child support. It also awarded Virginia four years maintenance at $700 per month, to be reduced to $500 after three years.

[2] The trial court found that William was earning about $60,000 per year with bonuses. The package consisted of a lump sum payment of $32,898, which represented eight months salary,

laterally to another company. He also investigated opening a video tape rental franchise. His research indicated that although the projected net corporate earnings for a franchise's first year of operation were zero, substantial increases were to be expected in the following years.[3]

William voluntarily terminated his employment with Johnson Wax effective June 30, 1990. After receiving the separation package, he prepaid his child support through June 1991. He also paid Virginia her interest in his separation benefits plan, which was awarded to her under the divorce judgment.[4]

William and his current wife then purchased a video rental franchise and formed a corporation for the purpose of starting the rental business.[5] Each contributed $7500 of their own funds towards the franchise fee, and they financed the remainder of moneys needed with bank loans. Each of them also invested $26,000 in personal funds for the purchase of a home near the business.

The business opened in February 1991. As a fledgling venture, profits from the business were needed

and with William's accumulated separation benefits plan, totaled about $45,000.

[3] The projected net corporate earnings for operating a franchise were zero for the first year, $5000 to $15,000 for the second year, $20,000 to $35,000 for the third and fourth years, and between $60,000 and $90,000 after five years.

[4] To satisfy his child support obligation through June 1991, William made a lump sum payment to Virginia of $10,198.38, which represented 31% of the eight months salary he received from Johnson Wax as part of his separation package. Virginia was also paid $3639.67, which represented her interest under the divorce judgment in William's accumulated separation benefits plan.

[5] William is the principal shareholder of the corporation, owning 51% of the stock. His current wife owns the remaining 49%.

for operating expenses, maintaining a current inventory, and accumulating funds for the opening of a possible second franchise in 1993. To ensure the financial viability of the business, neither William nor his current wife expected to draw a salary from the business until January 1992, when William anticipated drawing a gross monthly income of $1500. Consequently, as of July 1991, William was in arrears on support, and Virginia began to depend on contributions from friends, relatives, the church, and federal and state assistance to provide for herself and the children.

On July 17, 1991, William filed the motion which inspired this appeal. He moved the court, in relevant part, to hold open his child support and maintenance obligations until he was able to receive a regular income from the business, and to order Virginia to reimburse him for the amount he overpaid her[6] when satisfying her interest in his Johnson Wax separation benefits plan.[7]

The hearing was held on October 16, 1991. The trial court found that William had voluntarily left Johnson Wax without first securing a comparable source of income and that he had knowingly started a new business that projected zero net corporate earnings for the first year. The court also found that he had invested a substantial amount of money in the business and in a new home. Finally, the court found that he had accumulated an arrearage of $4873 in child support and maintenance.

---

[6] The parties stipulated that Virginia was overpaid $1200.81.

[7] Virginia responded to the motion by moving the court for an order to show cause why William should not be held in contempt for failing to pay child support, failing to provide a copy of his annual tax returns, and failing to maintain a supplemental life insurance policy.

Though assuming that William's decision to leave Johnson Wax was well intended, the court found that it was "unreasonable" for William to leave without first securing a comparable source of income and to instead pursue a livelihood that would generate zero income the first year. Relying on *In re R.L.M.*, 143 Wis. 2d 849, 422 N.W.2d 890 (Ct. App. 1988), the court concluded that to support a determination of shirking it need not find that William intended to avoid his support obligations; it was sufficient to find that William's voluntary reduction of income was unreasonable. The court additionally found William in contempt for not paying support. It imputed to him the income he would have earned at Johnson Wax and ordered that the amount of child support and maintenance remain the same as that required under the divorce judgment. The court then fashioned an order which, while requiring William to pay the full amount of maintenance ordered under the divorce judgment, also allowed William one year in which to pay a portion of the ordered child support and to accrue the difference as an arrearage. The court also ordered William to satisfy the entire $4873 support and maintenance arrearage he had accumulated before Virginia had to reimburse him for the amount he overpaid her from his separation package. The order further directed William to contribute to Virginia's attorney's fees. William appeals.[8]

---

[8] On March 11, 1992, William moved the trial court for a modification of the court's October 16, 1991 support order. He alleged, *inter alia*, that he had become a serial payor upon his current wife giving birth to their child. *See* Wis. Adm. Code sec. **HSS 80.04**(1). The trial court reduced his monthly child support obligation—thereby reducing the accruing arrearage—but refused to modify the monthly amount required under the court's October order. William therefore only appeals the court's October order.

## II. SHIRKING

### A. Standard of Review

We first determine whether the trial court properly based William's support and maintenance obligations on the income he would have earned had he stayed at Johnson Wax. Ordinarily, an award of child support and maintenance is reviewed under the abuse of discretion standard of review. *See Roellig v. Roellig*, 146 Wis. 2d 652, 655, 431 N.W.2d 759, 760–61 (Ct. App. 1988). This determination is measured by the needs of the custodial parent and children and the then-existing ability of the noncustodial parent to pay. *Besaw v. Besaw*, 89 Wis. 2d 509, 517, 279 N.W.2d 192, 195 (1979).

This rule, however, is subject to a "shirking" exception. *Roellig*, 146 Wis. 2d at 657, 431 N.W.2d at 761. Where this exception applies it is proper to examine the noncustodial parent's earning capacity rather than actual earnings. *See id.* Shirking is established where the obligor intentionally avoids the duty to support or where the obligor unreasonably diminishes or terminates his or her income in light of the support obligation. *R.L.M.*, 143 Wis. 2d at 852–53, 422 N.W.2d at 892.

The issue in this case is whether William *unreasonably* terminated his employment at Johnson Wax. The legal standard of reasonableness presents a question of law. *Ozaukee County v. Flessas*, 140 Wis. 2d 122, 127, 409 N.W.2d 408, 410 (Ct. App. 1987). Ordinarily, an appellate court need not defer to the trial court's determination of a question of law; however, because the trial court's legal conclusion as to reasonableness is so intertwined with the factual findings supporting that conclu-

sion, an appellate court should give weight to the trial court's reasonableness conclusion. *Id.* We therefore review the trial court's ruling as a question of law, but one to which we must pay appropriate deference.

## B.  *Analysis*

William's argument is twofold: (1) the determination that his voluntary reduction in income was unreasonable is not a sufficient basis upon which to base a shirking determination; and (2) because he reasonably believed his termination was imminent, he did not voluntarily leave Johnson Wax.

### 1.  Voluntary decision to leave Johnson Wax.

We address the latter aspect of William's argument first. William relies on a series of events at Johnson Wax to support his conclusion that he reasonably believed his termination was "forced" and that he had no "choice" but to accept the separation package and leave Johnson Wax because his termination was imminent. William testified that he was reassigned from his first-shift managerial position to a third-shift supervisory position in the company's warehouse. He also testified that he was told by management that a promotion off of the third shift was improbable, and he was not permitted to interview for other company positions. Additionally, he testified that Johnson Wax offers severance packages only in cases of involuntary termination with cause.

Other evidence, however, does not support William's theory. William himself testified that despite his reassignment and the improbability of ever being promoted off of the third shift, he was assured of a position with the company as long as his job performance remained acceptable. Additionally, since the divorce

William had received a pay raise, and his most recent job performance review was favorable. William may have correctly perceived that a plateau had been reached in his career. And, he may have been justified in his belief that the remainder of his career at Johnson Wax would have been spent on the third shift. Based on our review of the record and of other cases in which a voluntary change in financial status was at issue, we conclude the trial court properly found that William voluntarily chose to terminate his employment.[9]

---

[9] *Compare Knutson v. Knutson*, 15 Wis. 2d 115, 117, 111 N.W.2d 905, 907 (1961) (divorced spouse voluntarily left his well-paid medical practice and left the state for the express purpose of intentionally reducing his income in order to avoid his alimony obligation); *In re R.L.M.*, 143 Wis. 2d 849, 853-54, 422 N.W.2d 890, 892 (Ct. App. 1988) (noncustodial parent's voluntary choice to work part time and attend school does not relieve parent of the amount of support which could reasonably be paid if parent would have worked full time); *Tozer v. Tozer*, 121 Wis. 2d 187, 190, 358 N.W.2d 537, 539 (Ct. App. 1984) (fact that divorced spouse voluntarily quit job before securing alternative employment was factor considered in determination that spouse was not entitled to a reduction in child support or maintenance) *with Balaam v. Balaam*, 52 Wis. 2d 20, 27-28, 187 N.W.2d 867, 871 (1971) (where husband's income had been reduced due to a deterioration of his business and there was no evidence that the reduction was for the purpose of avoiding support and maintenance, ability to pay should be based on husband's actual earnings at the time the award is sought);*Wallen v. Wallen*, 139 Wis. 2d 217, 225-26, 407 N.W.2d 293, 296-97 (Ct. App. 1987) (where divorced father was involuntarily laid off from work through no fault of his own and there was no evidence of bad faith in failing to recover financially, child support should have been based on his actual earnings at the time of the divorce).

### 2. Lack of intent to avoid support and maintenance obligations.

William next argues that because his decision to leave Johnson Wax was well intended, it was error to find that he was guilty of shirking his support and maintenance obligations. He relies on *Balaam v. Balaam*, 52 Wis. 2d 20, 187 N.W.2d 867 (1971), and this court's decision in *Wallen v. Wallen*, 139 Wis. 2d 217, 407 N.W.2d 293 (Ct. App. 1987), as support for his argument.

In *Balaam*, our supreme court dealt with the question of whether a husband was intentionally shirking his support obligations where it appeared that he was earning less at the time of the divorce than he had earned in previous years. There, the husband's reduction in income was due to a deterioration of his business; the reduction in income was involuntary. *Balaam*, 52 Wis. 2d at 27–28, 187 N.W.2d at 871. The court held that absent a finding of intent to disregard support obligations, the trial court's consideration of the husband's earning capacity—rather than actual earnings—was improper. *Id.* at 28–29, 187 N.W.2d at 872. *See also Edwards v. Edwards*, 97 Wis. 2d 111, 119 & n.4, 293 N.W.2d 160, 165 (1980); *Wallen*, 139 Wis. 2d at 224, 407 N.W.2d at 295. The *Balaam* court also stated, however, that:

> A divorced husband should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities *even though he might for the present, at least, be working for a lesser financial return. This rule is, of course, subject to reasonableness commensurate with his obligations to his children and his former wife.*

495

*Balaam*, 52 Wis. 2d at 28, 187 N.W.2d at 871 (emphasis added).

In *R.L.M.*, 143 Wis. 2d at 852, 422 N.W.2d at 892, we were confronted with a situation where, like here, although the father obligated to pay child support had voluntarily reduced his income, it was not for the purpose of avoiding his support obligations. Nonetheless, the trial court took a dim view of the reduction, finding that it was "unfair" for him to voluntarily deprive the child of support. *Id.* at 851, 422 N.W.2d at 891. We agreed, stating:

> It makes no difference to his child whether the court elects to call T.J.W.'s failure to meet his support obligations "shirking" or gives it some other name. In either instance, the effect is identical—T.J.W.'s [voluntary] decision to reduce his income by working part-time effectively deprives his child of the support to which the child is reasonably entitled. When this occurs, the trial court need not base its support award on the noncustodial spouse's current earnings; instead, the court is permitted to base its support order on the spouse's potential income.

*Id.* at 853–54, 422 N.W.2d at 892.

We acknowledge that a shirking determination usually implies a finding of intent to avoid support obligations. *See id.* at 852, 422 N.W.2d at 892; *Wallen*, 139 Wis. 2d at 224, 407 N.W.2d at 296. However, even where the obligated person's voluntary reduction in income is well intended, we conclude it is proper, as suggested by *Balaam* and *R.L.M.*, to assess the reasonableness of that decision in light of the person's support or maintenance obligations. Such a rule adequately protects those entitled to support and maintenance, yet permits the obligor to *reasonably choose* a means of livelihood and to pursue

what the obligor honestly believes are the best opportunities though the financial returns may, for the present, be less. *See Balaam*, 52 Wis. 2d at 28, 187 N.W.2d at 871; *see also R.L.M.*, 143 Wis. 2d at 853, 422 N.W.2d at 892.

Applying that rule here, we agree with the trial court's conclusion that William was shirking his child support and maintenance obligations.

William's argument equates self-interest with good faith. Such, however, is not the law. Here, William had a legal obligation to meet his child support and maintenance obligations. And, he had a well-paying position at Johnson Wax that enabled him to do so. Yet he voluntarily left this position without first securing a comparable source of income and chose to pursue a business knowing that it would take five to six years—when the majority of his children would be adults—before he reached a comparable income level. Instead, William could have stayed at Johnson Wax, started the business, and left when it was producing an income sufficient to allow him to continue his support payments.

The trial court was required to consider not only William's conditional right to make a career decision but also the effect of such a decision on those to whom William owed legal obligations of support and maintenance. The court's unwillingness to suspend William's support and maintenance obligations order reasonably represents a proper balancing of these competing interests. The order requires William to pay his full monthly maintenance obligation, but for one year allows him to satisfy his child support obligation based on the salary he intended to draw from the business, accrue the difference as an arrearage, and still maintain his newly-formed business.

■■■ Our decision here should not be overread. The law recognizes the right of an obligor to make career decisions which, in some instances, will diminish the income available to meet the obligor's support or maintenance duty. Indeed, in the appropriate case, such a decision may be the more prudent career decision over the long term, despite its immediate disadvantage to both the obligor and the obligee. However, since the reasonableness of the conduct is the standard, this right is qualified—not absolute.

### III. CONTEMPT

William also argues that because his reduced income rendered him unable to pay and there was no finding that he intended to avoid his obligations, the trial court abused its discretion by finding him in contempt for being in arrears on child support and maintenance.

As of October 15, 1991, William was in arrears by $3660 in child support and $1213 in maintenance. The trial court found him in contempt for his willful failure to pay and ordered him incarcerated with work release privileges for a period not to exceed six months. The order was stayed for three years upon the condition that William make his full monthly maintenance and child support payments as modified.

■■■ It is true that mere inability to pay support or maintenance cannot support a finding of contempt. *Burger v. Burger*, 144 Wis. 2d 514, 528, 424 N.W.2d 691, 697 (1988). However, a person may be held in contempt for failure to pay where that failure is willful and contemptuous and not the result of an inability to pay. *Id.* In a contempt proceeding, the burden of proof is on the person against whom the contempt is charged to show that

the conduct is not contemptuous. *Besaw*, 89 Wis. 2d at 517, 279 N.W.2d at 195.

Considering our discussion in the preceding section, we conclude that William's arrearage was the result of his willful disobedience and not of an inability to pay. William had the financial ability to pay support and maintenance. Yet, in an unreasonable disregard of those obligations, he left his well-paying job at Johnson Wax without first securing a comparable income. He also chose to pursue a business with no immediate prospect of earning an income adequate to enable him to meet his support obligations and invested a substantial sum of money in the business and in a new home. William was thus directly responsible for his inability to meet his obligations and for allowing the arrearages to accrue. If the court concludes from past performance that a paying parent cannot be relied upon to keep up on support obligations until some legal force is exerted, use of contempt is perfectly justified. *Burger*, 144 Wis. 2d at 528, 424 N.W.2d at 697. Because the evidence amply supports the trial court's finding, the trial court properly exercised its discretion by finding William in contempt.

## IV.  ATTORNEY'S FEES

William also challenges the trial court's requirement that he contribute $2000 toward Virginia's attorney's fees. This is, again, a discretionary award which will be upheld unless the trial court abused its discretion. *Bisone v. Bisone*, 165 Wis. 2d 114, 123–24, 477 N.W.2d 59, 62 (Ct. App. 1991). Attorney's fees are to be awarded upon a showing of need, ability to pay, and the reasonableness of the fees. *Id.* at 124, 477 N.W.2d at 62. Among the factors which necessarily must be considered are the

499

assets, income and liabilities of both parties. *Anderson v. Anderson*, 72 Wis. 2d 631, 645, 242 N.W.2d 165, 172 (1976).

William claims that because the trial court's order already requires him to pay an amount which equals his anticipated gross monthly income, the court erred in finding that he had the ability to pay the contribution. We disagree.

The trial court found that Virginia had to depend on contributions from friends, family, the church, and from federal and state assistance to provide for herself and the children. It also found that William had chosen to divert all of his income and assets into the newly-formed business and a new home, and that Virginia's attorney's fees resulted from her responding to William's motion and her contempt motion seeking to enforce the divorce judgment's award of support and maintenance. Concluding that fairness dictated that William contribute $2000 towards the fees, the court ordered him to pay $100 per month. The court specifically stated that:

> I think fairness dictates that there be a contribution to Virginia's attorneys fees by William.. . . She wouldn't even be here had he not stopped making the payments and petitioned the Court to relieve him of any responsibility to pay child support for four kids . . . and [to] be relieved from his responsibility to pay . . . maintenance to his former wife who is attending school full-time, so that he can get his business venture off the ground.
>
> . . ..
> There's no doubt he's going to be strapped, but he's strapped because he made the choice to quite [sic] a $60,000.00 a year job and start up a business that he projected would not pay him any income for a number of years.
>
> . . ..

Court will order that it be paid at the rate of $100.00 a month contribution. I recognize he's—he's got some financial difficulties; on the other hand, he's got—he, with his present spouse, has over $100,000.00 equity together with his spouse in a business and a house. And with that kind of equity, he should be able to squeak out $100.00 a month.

The trial court's decision tracks in all pertinent respects the relevant factors for an award of attorney's fees, and we conclude that the court's findings are not clearly erroneous. Section 805.17(2), Stats.

## V.  REFUSAL TO OFFSET THE OVERPAYMENT

William finally challenges the requirement that he satisfy his support and maintenance arrearage before Virginia reimburses him for the amount she was overpaid to satisfy her interest in the separation benefits plan. Specifically, he argues that the trial court abused its discretion by refusing to offset the amount Virginia was overpaid against either his accumulated arrearage or his contribution to Virginia's attorney's fees.

We first address the trial court's precise decision on this point. The court recognized that William had overpaid Virginia when the separation payment was made. William asked that this overpayment be credited back to him by an offset against his obligations to Virginia. The court rejected this mechanism. However, the court *did not* reject William's basic premise that he had overpaid Virginia and that he was properly entitled to reimbursement. Instead, in light of Virginia's dire financial circumstances, the court chose to first require William to satisfy his support and maintenance arrearages before

requiring Virginia to reimburse William. We conclude that under the unique and compelling facts of this case, the trial court's decision was not an abuse of discretion.

## VI.  COSTS

Virginia claims that William's issues on appeal are frivolous and requests us to order fees and costs pursuant to Rule 809.25(3)(a), Stats. However, Virginia's motion was filed after the filing of her respondent's brief and was therefore untimely. *See id.*

Nonetheless, we choose to address Virginia's motion on the merits. *See* Rule 809.83(2), Stats. We conclude that given the uncertainty of the law of shirking and contempt with regard to the element of intent, we cannot find that William's arguments are made in bad faith or without the support of a good faith argument for an extension, modification or reversal of existing law. *See* Rule 809.25(3)(c)2, Stats. We therefore decline to order the costs and fees as requested.

*By the Court.*—Order affirmed.