IN RE the MARRIAGE OF: Anne M. KELLY, Petitioner-Respondent,†

v.

Gavin W. HOUGHAM, Respondent-Appellant.

Court of Appeals

*No. 92–0160. Submitted on briefs May 26, 1992.—Decided July 29, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review pending.

For the respondent-appellant the cause was submitted on the briefs of *Mark D. Burish* of *Hurley, Burish & Milliken, S.C.* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Cheryl Rosen Weston* of *Cullen, Weston, Pines & Bach* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J.   The parties to this divorce action stipulated that appellant, Gavin W. Hougham, would pay his former wife, Anne M. Kelly, twenty five percent of his gross income to support the parties' two minor children. Their stipulation was incorporated in the divorce judgment entered April 19, 1990. Twenty-five percent of Hougham's gross income resulted in an initial child support obligation of $653.42 per month. On

September 16, 1991, Hougham moved to enforce the divorce judgment and reduce his child support payment because he had quit his full-time job to resume his postgraduate education, thereby reducing his gross income substantially.

The trial court considered Hougham's motion as a request for modification of a child support order and adopted the "two-tiered" approach which this court approved in *In re R.L.M.*, 143 Wis. 2d 849, 422 N.W.2d 890 (Ct. App. 1988). Applying this approach, the court continued Hougham's child support obligation at $653.42 per month based on past earning capacity, but required him to pay only $362.50 per month. The court ordered that the difference accumulate as court-ordered arrearages subject to eighteen percent interest under sec. 767.25(6), Stats., payable when Hougham was no longer a full-time student.

We conclude that a substantial change in the parties' financial circumstances occurred which requires a modification of Hougham's child support obligation under sec. 767.32(2), Stats. However, we decide that the two-tiered approach we approved in *R.L.M.* is not appropriate in this case. We conclude that Hougham's decision to complete his education was a choice reasonably consistent with the advancement of his career and commensurate with his obligations to his children, even though his income will be temporarily reduced. We also conclude that the trial court incorrectly determined Hougham's rental income. We therefore reverse the order and remand for further proceedings consistent with our decision.

## ISSUES

Hougham presents the following issues:[1]

(1) Did the trial court erroneously exercise its discretion when it required Hougham to pay two-tiered child support pursuant to *R.L.M.*? We conclude that the trial court erroneously exercised its discretion when it used the *R.L.M.* approach, in light of the requirement of sec. 767.32(2), Stats., that in modifying child support, the trial court *shall* apply the child support percentage standard established by the department of health and social services under sec. 46.25(9)(a), Stats.

(2) Did the trial court erroneously exercise its discretion when it failed to consider Kelly's increased income in determining child support? We decide that the trial court erroneously concluded that Kelly's increased income should not be considered in determining whether Hougham's child support obligation should be modified.

(3) Did the trial court erroneously exercise its discretion when it imputed monthly rental income from Hougham's duplex to him without offsetting expenses he incurs in maintaining the property? We conclude that the trial court erroneously determined Hougham's gross income when it failed to offset expenses against income from his duplex.

---

[1] The court requested and received additional briefing by the parties on the issue of applying the eighteen percent interest rate provided under sec. 767.25(6), Stats., to "second-tier" deferred child support payments provided by *In re R.L.M.*, 143 Wis. 2d 849, 422 N.W.2d 890 (Ct. App. 1988). However, our disapproval of *R.L.M.*'s application to this case makes determination of the appropriate interest rate unnecessary: we do not decide the issue of interest charged under sec. 767.25, Stats.

## BACKGROUND

Hougham and Kelly were married in December 1981 and divorced in March 1990. Two children were born of the marriage; both reside primarily with Kelly. When the couple married, Hougham was a postgraduate student. He remained a full-time student through 1984. During the last five years of the marriage he was employed full-time as a public health educator for the State of Wisconsin, earning approximately $31,000 per year. From 1982 through mid-1988, Kelly taught sociology at Marquette University. In the fall of 1988 she entered law school, graduating in the spring of 1991.

In the summer of 1991, Hougham quit his job and re-enrolled at the University of Chicago to complete his postgraduate education. Hougham moved to modify his child support obligation following Kelly's law school graduation and employment as an attorney for the U.S. Postal Service in West Hartford, Connecticut, earning $45,000 per year.

The trial court found that Hougham earns part-time wages of approximately $600 per month. Hougham rents a Chicago dormitory room, but also lives in a duplex he owns and shares with a companion in Milwaukee. He receives $400 per month rent from the second apartment in his duplex. The court imputed $450 per month income to Hougham as rent he could collect from his duplex apartment if he did not use it as a second home with his companion. The court found it was "unreasonably extravagant" to maintain two homes, in light of his obligation to his children. The court did not consider Hougham's expenses in maintaining the duplex. Therefore, the court determined Hougham's gross income to be $1,450 per month.

The trial court applied *R.L.M.*'s "two-tiered" approach to Hougham's child support obligations

because he left a well-paying job to pursue his post-graduate education. The court concluded that Kelly's recently increased income did not diminish Hougham's child support obligation because Kelly's child care expenses had increased and because her increased salary should benefit Kelly and the children as consideration for the first four years of marriage during which she supported Hougham while he pursued his postgraduate education.

## I.

We construe Hougham's "motion to enforce judgment of divorce" as a request to modify the divorce judgment pursuant to sec. 767.32(1), Stats.[2] Hougham asserts that: "[T]he principle that change in circumstances must be considered is the foundation for his request that his support obligation be reduced as a result of his lower income." The trial court denied Hougham's motion, but, relying on *R.L.M.*, reduced Hougham's actual payments to $362.50 a month, with the balance of $290.92 per month to accumulate as arrearages, subject to eighteen percent interest.

In *R.L.M.*, we affirmed a child support award in a paternity action which allowed R.L.M.'s father, T.J.W., to pay only $12 per week to R.L.M.'s mother, M.A.M., out of a total obligation of $40 per week. However, the diminished payment was conditioned on T.J.W.'s continued full-time enrollment in good standing at the

---

[2] Section 767.32(1), Stats., provides in part: "After a judgment providing for child support under s. 767.25 . . . the court may, from time to time . . . revise and alter such judgment respecting the amount of such . . . child support and the payment thereof . . . and may make any judgment respecting any of the matters which such court might have made in the original action . . . ."

University of Wisconsin. The trial court deferred payment on the $28 per week balance, which accumulated as court-ordered arrearages. We consider *R.L.M.* to have been an appropriate response under the circumstances of that case.

■

However, we do not consider *R.L.M.*'s two-tiered approach appropriate in this case. First, the child support standard is now mandatory whether the trial court is making an initial determination of child support or a modification. Use of the child support standard under Wis. Adm. Code sec. HSS 80.03(1) was not mandatory when the *R.L.M.* trial court decided the case. *R.L.M.*, 143 Wis. 2d at 854 n.2, 422 N.W.2d at 893 n.2. Nor was the standard mandatory in child support modifications under sec. 767.32, Stats. *See, e.g., In re Abitz*, 155 Wis. 2d 161, 179–80, 455 N.W.2d 609, 616–17 (1990).

When *R.L.M.* was decided, the *R.L.M.* trial court could fashion child support it considered appropriate under the circumstances. Under the present mandatory child support standard, however, a noncustodial father is required to pay as child support the prescribed percent of his gross income; no deferred or "second-tier" payments are possible. A modification of child support "shall" be made "by using the percentage standard established by the department of health and social services under [Wis. Adm. Code sec. HSS 80.03(1)]." Section 767.32(2), Stats. However, upon request of a party, the trial court may modify the revised child support if the court finds that the use of the percentage standard is unfair to the child or any of the parties. *Id.* No finding of unfairness was made in this case.

Second, in *R.L.M.*, neither parent had significant assets or income. The mother's part-time employment provided approximately $40 per week; the father's part-time employment provided approximately $80 per week—half of which was ordered paid in child support. The mother and child were supported primarily by AFDC payments; the father was supported primarily by his parents. Over the course of T.J.W.'s four-year education the arrearages he incurred would total at most several thousand dollars. On the other hand, after three years of postgraduate education, Hougham will have incurred a debt of approximately $14,000. We believe that a debt of this amount will substantially impair Hougham's opportunity to freely pursue his choice of occupation.

Finally, the trial court did not find Hougham was shirking his child support responsibility. "Shirking is established where the obligor intentionally avoids the duty to support or where the *obligor unreasonably diminishes or terminates his or her income* in light of the support obligation." *In re Van Offeren*, 173 Wis. 2d 482, 492, 496 N.W.2d 660, 663 (Ct. App. 1992) (emphasis added). *Balaam v. Balaam*, 52 Wis. 2d 20, 28, 187 N.W.2d 867, 871–72 (1971), holds that, where reasonable, a payor spouse may sacrifice present earnings to develop his or her occupational opportunities. Hougham has decided his best opportunity is to complete his postgraduate education.

Having rejected the *R.L.M.* approach, we must consider whether Hougham has shown a change in circumstances justifying a reduction of his child support obligation. "[W]here there has been a substantial or material change in the circumstances of the parties or

the children," the court may modify child support. *In re Roellig*, 146 Wis. 2d 652, 656, 431 N.W.2d 759, 761 (Ct. App. 1988). Whether a change in circumstances is substantial is a question of law, although we may give weight to the trial court's determination. *In re Long*, 147 Wis. 2d 57, 60, 432 N.W.2d 615, 616 (Ct. App. 1988). The burden of demonstrating a substantial change in circumstances is on the party seeking modification. *In re Thibadeau*, 150 Wis. 2d 109, 115, 441 N.W.2d 281, 283 (Ct. App. 1989).

■

When the judgment divorcing Hougham and Kelly was entered April 19, 1990, Kelly was a law student with a part-time job and Hougham was working full-time and earning approximately $31,000 per year. When Hougham brought his motion to enforce the judgment on September 16, 1991, Kelly was earning approximately $45,000 per year as an attorney and Hougham was re-enrolled in graduate school, earning part-time wages of approximately $7,200 per year with additional rental income. Based on these undisputed facts, we conclude as a matter of law that the parties' financial circumstances have changed substantially.

■

Hougham's decision to leave a well-paying job to pursue his postgraduate education objectives contributed significantly to the parties' changed circumstances. He must justify his decision in light of his obligations to his children. We conclude that he has done so. In *Balaam*, 52 Wis. 2d at 28, 187 N.W.2d at 871 the court said: "A divorced husband should be allowed a fair choice of a means of livelihood and to pursue what he honestly feels are his best opportunities even though he might for the present, at least, be working for a lesser financial return." *See also Van*

556

*Offeren*, 173 Wis. 2d at 498, 496 N.W.2d at 666; *In re Wallen v. Wallen*, 139 Wis. 2d 217, 223, 407 N.W.2d 293, 295 (Ct. App. 1987).

■

Kelly emphasizes that Hougham voluntarily quit his job and reduced his income. However, the trial court failed to find that Hougham was shirking his obligations, *see, e.g., Knutson v. Knutson*, 15 Wis. 2d 115, 121, 111 N.W.2d 905, 909 (1961), or that his career change deprived his children of support to which they are entitled, *see, e.g., Sommer v. Sommer*, 108 Wis. 2d 586, 590, 323 N.W.2d 144, 146 (Ct. App. 1982).

We do not believe Hougham's decision unreasonably diminishes his support obligation. Nor do we see any evidence that Hougham's decision was motivated by an intent to shirk his child support obligation. The record shows that he delayed returning to school until Kelly graduated and secured a well-paying job as an attorney. He continues to work part-time at a respectable wage. The reduction in his income is expected to be temporary, with potential for increased future earnings. In *Van Offeren* we said:

> The law recognizes the right of an obligor to make career decisions which, in some instances, will diminish the income available to meet the obligor's support . . . duty. Indeed, in the appropriate case, such a decision may be the more prudent career decision over the long term, despite its immediate disadvantage to both the obligor and the obligee. However, since the reasonableness of the conduct is the standard, this right is qualified—not absolute.

173 Wis. 2d at 498, 496 N.W.2d at 666.

Kelly disputes the increased earning capacity Hougham can reasonably anticipate upon completion of his postgraduate program. Hougham estimates his earning capacity on completing his degree to be from $35,000 to $70,000 per year. Hougham may ultimately pay substantially more child support as a direct result of his postgraduate education. Further, financial compensation is not the exclusive factor to consider in determining whether a career change resulting in reduced income is a reasonable choice; the rewards of Hougham's postgraduate degree may benefit his children in intangible ways. We believe this is an appropriate case to modify a child support order to permit the payor spouse to make a career choice which will temporarily reduce his obligation but may ultimately benefit the parties and the children.

We conclude that Hougham has shown changed circumstances which require the trial court to modify his child support obligation by using the percentage standard established by the department of health and social services under sec. 46.25(9)(a), Stats. Section 767.32(2), Stats.

## II.

Hougham asserts as separate grounds supporting his appeal that the trial court failed to properly consider Kelly's increased income. He argues that his decreased child support "will not adversely affect his children's standard of living" because Kelly now has a substantial income as an attorney. Kelly claims that the trial court not only did not disregard her substantially increased income, but also noted her increased expenses as custodial parent of the children.

However, it is undisputed that the parties' combined income now exceeds their combined income during their marriage. When divorced, Hougham's and Kelly's combined income was approximately $40,000, earned primarily by Hougham. Their combined income is now approximately $52,000, earned primarily by Kelly. The trial court considered, however, that Kelly's increased income should only benefit her and the children.

Hougham justifies his request that more of the child support burden be temporarily shifted to Kelly on the basis of the parties' tacit understanding that after Kelly completed her legal education, he would accomplish his educational goals. At the hearing on his motion, Hougham testified that he always intended to complete his postgraduate education when it became financially possible. He stated that he and Kelly had discussed the issue frequently, before and after their divorce. Kelly does not dispute Hougham's assertion that the couple agreed Hougham would eventually resume his education when able. Instead she argues: "The fact that during the marriage, one parent worked full-time while the other was a student with part-time income, is simply irrelevant for future child support."

We disagree. Child support modification "shall take into consideration each parties' earning capacity and total financial circumstances." Section 767.32(1), Stats. During the marriage, it was necessary for Hougham to support Kelly's pursuit of her educational goals while supporting the children. The record supports the inference that the couple intended Hougham would complete his education when financially able. Tacit or otherwise, Kelly's and Hougham's understanding that Hougham would complete his education when

she finished law school is relevant. Further, we believe that Kelly's increased income should not only benefit her and the couple's children directly, but may also indirectly benefit Hougham by allowing him to temporarily reduce his income. Her increased salary is within the parties' total financial circumstances described in sec. 767.32(1).

It is unlikely that Kelly could have obtained her law degree and helped raise two children without the benefit of Hougham's underlying full-time financial support as the family's primary wage earner. Hougham testified that the family probably "could not have made it" while Kelly was in law school without his full-time income. Although Kelly contends that her expenses have increased, she does not argue that the children's standard of living will decrease as a result of Hougham's decreased support. The trial court acknowledged Kelly's increased income, but failed to recognize the parties' total financial circumstances, sec. 767.32(1), Stats., and consider that Kelly's substantial income may temporarily relieve Hougham from a portion of his child support obligation.

## III.

The trial court found Hougham's Milwaukee duplex was an underproductive asset, requiring imputation of income to Hougham under Wis. Adm. Code sec. HSS 80.05. The trial court computed Hougham's gross income of $1,450 by adding $850 per month in collectible rent to his part-time wages of $600 per month.

Hougham's Final Financial Disclosure Statement and tax returns filed with the court in the divorce show, however, that he pays approximately $600 per month

on a mortgage, taxes, insurance, and maintenance on the property. Even if, as the trial court advises, Hougham moved from his Milwaukee duplex to his Chicago dormitory room, the record supports no more than $250 per month imputed income from the duplex rental. At most, Hougham's present actual income is approximately $850 per month. On remand, the trial court shall offset against Hougham's rental income, actual or imputed, Hougham's ownership and maintenance expenses for the duplex.

### IV.

We conclude: (1) *R.L.M.*'s two-tier approach is inappropriate in this case; (2) Hougham has established changed circumstances justifying a decrease in his child support obligation; (3) Hougham's child support obligation shall be computed as a percentage of his present gross income according to the mandatory HSS child support standard; (4) the increase in Kelly's income is part of the parties' total financial circumstances and shall be considered in determining Hougham's child support obligation; and (5) Hougham's imputed rental income shall be offset by expenses incurred in owning and maintaining the property. We reverse the trial court's order and remand the case for recalculation of Hougham's gross income and redetermination of his child support obligation consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

EICH, C.J. (*dissenting*). I would affirm the trial court's response to Hougham's decision to return to school to pursue postgraduate studies.

First, I do not think the fact that the dollar amount of child support is now determined by application of percentage-of-gross-income guidelines, rather than "from scratch" by the trial court, impedes or negates the court's discretionary authority to provide for a temporarily reduced support payment in order to accommodate a payor in Hougham's position, deferring the arrearages to a later date.

Second, as we said in *In re R.L.M.*, 143 Wis. 2d 849, 852–53, 422 N.W.2d 890, 892 (Ct. App. 1988), the court need not find that the payor is "shirking" in order to enter such an order. It may be true, as was suggested in *R.L.M.*, that Hougham's decision to return to school may enhance his earning capacity in the future, but the fact remains that because his decision has voluntarily reduced his income, it has deprived his children of the level of support to which they had been found entitled by the court. And if, at the end of his current stint of schooling, he will have, as the majority posits, accrued child support arrearages of $14,000, it seems to me that that is the *quid pro quo* of his decision to pursue a postgraduate degree while his minor children still require his financial support.

Unlike the majority, I see nothing "excessive" about such a result, nor do I share the judges' view that the order will "substantially impair Hougham's opportunity to freely pursue his choice of occupation." Majority op. at 555. Hougham's first choice was to father two children. The obligations imposed on him by that decision will not cease or diminish while he continues his education, nor will the needs of his children. To me, the trial court, exercising the considerable discretionary powers it possesses in matters of child support, fashioned a reasonable accommodation of Hougham's

wishes and his children's needs and I would not disturb it.

Finally, I agree that Hougham's imputed income from his Milwaukee duplex must be offset by the expenses of owning and maintaining the property and I would, like the majority, remand for recalculation of that figure.