# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE EX REL CHARLES RUSSELL LEDBETTER v. MARY ANN ELMORE GODSEY

### Direct Appeal from the Circuit Court for Fentress County
### No. 121999       Conrad E. Troutman, Jr., Judge

---

### No. M1998-00958-COA-R3-CV - Decided June 22, 2000

---

Mother appeals the trial court's refusal to reduce her child support payment to allow her to remain unemployed while attending college. While the record supports the trial court's implicit finding that Mother is, and has been, willfully and voluntarily unemployed or underemployed, it is insufficient to ascertain Mother's potential earnings, a necessary component of the significant variance determination. We remand for a determination of mother's potential earnings and application of Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(d).

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded.

COTTRELL, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., AND CRAWFORD, J., joined.

Paul G. Summers, Attorney General and Reporter, Tammy L. Kennedy, Assistant Attorney General, for appellee, State of Tennessee ex rel. Charles Russell Ledbetter.

Randle W. Hill, Jr., Nashville, Tennessee, for appellant, Mary Ann Elmore Godsey.

### OPINION

At the parties' divorce, the court ordered joint custody with Charles Russell Ledbetter ("Father") as primary custodian of the couple's three minor children (born 1980, 1983, and 1986). Mary Ann Elmore Godsey ("Mother") was not ordered to pay child support at the time of the divorce. She later remarried and apparently was employed sporadically. In 1994, Father petitioned the court to award child support because Mother was then employed. The court ordered Mother to pay $325 per month in child support, apparently based on an annual income of $17,700, and found that a downward deviation from the Child Support Guidelines was justified because of Mother's expanded visitation. Mother was also ordered to pay half of the children's medical insurance and half of the medical and dental expenses not covered by insurance.

A few months after the child support order was entered, in September 1994, Mother lost her job because of a violation of a company rule.[1] She sought a reduction in child support the next day. Mother's petition was not heard until September 1995.[2] At that hearing, Mother stated that she had been terminated from her employment, did not voluntarily quit her job, and "attempted to find work but was unable to do so" after her termination.[3]

In January 1995, Mother enrolled at Roane State Community College ("Roane State") to take courses necessary to allow her to enroll in a 2-year or 4-year nursing program. She testified that she needed 12 to 16 credit hours[4] and a high grade point average to qualify for either of the nursing programs. At the time of the September 1995 hearing, Mother stated she entered Roane State in January of 1995, had started the current term in August 1995, and was a full-time student. She had worked part-time for eight weeks during the summer for $5.50 per hour, but otherwise had earned no income since her termination from employment in September 1994. Her husband was providing her total support while she attended school.

After the hearing, the referee entered an order decreasing Mother's child support, finding that Mother's employment was terminated involuntarily, and further finding:

> Ms. Godsey tried to find a job. She is now attending school full-time to obtain a nursing degree. It is in the best interest of the children for her to be encouraged to complete the degree. At this point, it is not known how long she will be in school. Her decision to re-enter school was reasonable.

The referee ruled that Mother was entitled to a reduction in child support and reduced the support obligation to $75 per month, retroactive to the initial petition in September 1994.

---

[1]According to Mother, she was terminated because she failed to report an accident at the time it happened. Mother stated that she did not report the accident on the night it happened because of a conflict with the foreman, and that she was fired the following Monday before she could file an accident report.

[2] A month after Mother filed her petition to reduce child support, Father filed an Answer and Counter-Petition asking the court to find Mother in contempt for failure to pay support or medical expenses. He filed another petition for contempt in July of 1997 asking for an arrearage judgment. These petitions and Mother's responses thereto, as well as other pleadings not relevant herein, were also heard at the September 19, 1995 hearing.

[3]The record includes a Statement of the Evidence pursuant to Tenn. R. App. P. 24(c).

[4]This testimony is difficult to reconcile with testimony at a later hearing that Mother had completed 77 credit hours at Roane State and needed more than one additional year at Roane State to qualify for the nursing program at the University of Tennessee at Chattanooga.

The State, on behalf of Father,[5] appealed the ruling to the circuit court, which restored the child support to the original amount and remanded the case to the referee for a determination of the arrearage. In its order, the trial court stated, "The Respondent's ability to earn controls the amount of child support she should pay, not her actual earnings. She has elected to go to school."

A hearing before the referee was held on remand on November 12, 1996. The referee found that Mother "is finishing the nursing program. She has one more semester, then, will apply for the next nursing program. She hopes to obtain a bachelor's degree. She is not employed." The referee calculated the arrearage through October 31, 1996, reaffirmed a prior judgment for insurance premiums through August 30, 1995, which had not been paid, and set the arrearage in insurance premiums through October 31, 1996.[6] The referee set the amount owed at that time at $9,457.81, but "reserv[ed] setting payments on same as the Respondent should be encouraged to complete the nursing program and she does not have any current ability to pay." He entered judgment for $9,457.81 and ordered Mother to pay child support and medical expenses at $411.18 per month.

Mother appealed to this Court in 1997, but the appeal was dismissed because the order was not final. After Mother moved for entry of a final judgment, another hearing was held in October 1997 before the trial court.[7] At that time, Mother was working 37.5 hours per week at $5.53 per hour, for a gross monthly income of $926.22. She was working four nights a week, and attended class at Roane State two days a week that fall semester of 1997. Mother testified she had completed 77 credit hours and had a 3.98 grade point average. She intended to take 7 credit hours the next semester and needed to complete one more year at Roane State after that. After her anticipated completion of courses at Roane State in the spring of 1999, she planned to enroll in a two year nursing program at the University of Tennessee at Chattanooga.

In July of 1998, the trial court issued a final order, finding that Mother was "able to pay" child support payments of $325 per month and to make payments of $150 per month on the arrearage of $12,351.21,[8] and ordering her to do so. The court stated:

> We all make decisions which will affect our whole lives. The parties were married and had three children born in 1980, 1983, and 1986 who must be supported. . . . Ms. Godsey chose to return to school in January 1995. The support of these children comes first.

---

[5]Father received representation from the Child Support Division of the District Attorney's Office through the State's IV-D program.

[6]The referee specifically reserved the issue of any unpaid medical expenses Mother might owe which had not already been reduced to judgment.

[7]A Statement of Evidence for this hearing was filed.

[8]This arrearage was calculated as of September 30, 1997.

Mother has appealed that order, arguing that the trial court erred in not reducing her child support payments due to her involuntary termination and her decision to go back to school.

## I. Standard of Review

We review this case *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. *See Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999); Tenn. R. App. P. 13(d). When the trial court does not make a needed finding of fact, we must conduct our own review of the record to determine where the preponderance of the evidence lies. *See Brooks*, 992 S.W.2d at 405. If the trial court does not make a necessary finding of fact, and the record is inadequate for us to make that finding, we must remand to the trial court for such determination. *See In the Matter of K.E.C.D.*, No. M1998-00759-COA-R3-CV, 2000 WL 122545 at *4 (Tenn. Ct. App. Feb. 1, 2000) (no Tenn. R. App. P 11 application filed). No presumption of correctness attaches to the trial court's decisions regarding questions of law. *See Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998).

## II. Modification of Child Support Obligation

Mother was ordered to pay $325 per month in 1994, while she was employed full-time. Since her termination from that employment in 1994, Mother has been unemployed for part of the time while attending college and has worked in lower paying positions while attending school part-time for the remainder of the time. This appeal involves the sole issue of whether the trial court properly refused to reduce Mother's child support obligation based upon these facts.

The applicable standard for determining whether an existing child support order should be modified is the "significant variance test" which the General Assembly adopted in 1994. *See Turner v. Turner*, 919 S.W.2d 340, 342-43 (Tenn. Ct. App. 1995). This legislation provides that:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1999). Under the guidelines, the amount of support is formulaic, unless special circumstances are found, and is based on a flat percentage of the obligor's net income. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2) (1994). The party seeking the modification bears the burden of showing the necessary significant variance. *See Seal v. Seal,* 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990); *Turner*, 919 S.W.2d at 345.

A significant variance between the guideline amount and the current support order is defined as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month," and "[s]uch variance would justify the modification of a child support order unless, in

-4-

situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3) (1994).

Ordinarily, a court would use the obligor parent's actual income when determining whether a significant variance exists. However, potential, rather than actual, income may be used where the obligor parent is willfully and voluntarily unemployed or underemployed.[9]

> If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based upon a determination of potential income, as evidenced by educational level and/or previous work experience.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d) (1994); *see also Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719 at *2 (Tenn. Ct. App. Aug. 3, 1999) (no Tenn. R. App. P. 11 application filed).

### III. Willful and Voluntary Unemployment or Underemployment

The determination of whether a particular parent is willfully and voluntarily unemployed or underemployed is fact-dependent, and can only be made after consideration of all the circumstances surrounding that parent's past and present employment or business activities. Our courts will consider the reasonableness of the obligor parent's occupational choices in light of surrounding circumstances. *See Narus v. Narus*, No. 03A01-9804-CV-00126, 1998 WL 959839 at *2 (Tenn. Ct. App. Dec. 31, 1998) (no Tenn. R. App. P. 11 application filed) (obligor not willfully and voluntarily unemployed or underemployed where obligor chose "to retire at a reasonable age, for legitimate reasons, and otherwise under reasonable circumstances").

However, obligor parents will not be allowed to avoid or lessen their obligations to their children simply so that the parents can choose not to work or to work at lower-paying jobs. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996) (rejecting the Masters-degree obligor's argument that his actual income from his management of his rental properties should be used to compute child support because he had a fundamental right to choose to be self-employed and because he had been so self-employed prior to and during his marriage). The reason for the obligor parent's decision to take a lower paying job or reduce income-producing activities is relevant. In *McGaffic v. McGaffic*, No. 03A01-9707-CV-00286, 1997 WL 772899

---

[9] The word "willfully," as used in the guidelines, does not mean that the obligor must have intended to reduce or avoid his or her child support obligation through unemployment or underemployment. Thus, evidence of the obligor parent's intent to avoid support obligations is not required in order to substitute potential income for actual income. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947 at *4 (Tenn. Ct. App. Feb. 6, 1998) (no Tenn. R. App. P. 11 application filed) (citing *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258 at *3 (Tenn. Ct. App. Oct. 3, 1996) (no Tenn. R. App .P. 11 application filed)).

(Tenn. Ct. App. Dec. 9, 1997) (no Tenn. R. App. P. 11 application filed), the prior work history of the father as well as testimony at the hearing supported the trial court's finding that the father was underemployed because he took a lower-paying job where his employer allowed him to be off from work to pursue his hobby of drag racing. However, in *Creson v. Creson,* No. 02A01-9801-CH-00002, 1999 WL 65055 at *6 (Tenn. Ct. App. Feb. 12, 1999) (no Tenn. R. App. P. 11 application filed), this court determined that an obligor's decision to reduce the number of clients he serviced in his lawn care business did not constitute willful underemployment in view of his other full-time employment.

Often, the initial inquiry, where the reduction is sought on the basis of lost employment, is whether the obligor parent voluntarily quit. Where a parent with child support obligations voluntarily leaves the employment or business activity which provided the resources to maintain that support and chooses to cease working or to begin an activity which provides significantly less income, the courts are more inclined to find willful and voluntary unemployment or underemployment. *See Brooks,* 992 S.W.2d at 407; *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258 at *3 (Tenn. Ct. App. Oct. 3, 1996) (no Tenn. R. App. P. 11 application filed)

The fact that an obligor parent's loss of former employment was not voluntary does not, however, end the inquiry as to whether that parent is willfully and voluntarily underemployed. The term "willfully and voluntarily" implies a choice. While the initial loss of employment may have been involuntary, an obligor's course of action and decision-making after termination can demonstrate willful and voluntary underemployment. The determination of whether an obligor parent is willfully and voluntarily underemployed is one which is dependent upon the complete factual background of the obligor's situation. We believe this is especially true where the initial loss of employment was not due to the obligor parent's decision to voluntarily terminate his or her employment. In such situations, the obligor parent's attempts to find employment at a comparable salary, the availability of comparable or any employment, and the reasonableness of the employment or other choice under all the circumstances, including the support obligation, should be considered. *See Ralston*, 1999 WL 562719 at *4.

Two cases, *Marcus v. Marcus*, No. 02A01-9611-CV-00286, 1998 WL 29645 (Tenn. Ct. App. Jan. 28, 1998) (no Tenn. R. App. 11 application filed), and *Beem v. Beem*, No. 02A01-9511-CV-00252, 1996 WL 636491 (Tenn. Ct. App. Nov. 5, 1996) (no Tenn. R. App. P. 11 application filed), involve situations where a formerly-held position was eliminated and the obligor parent subsequently started his own business which produced considerably less income than the previous employment. The records in both cases, however, included evidence of efforts by the obligor to find other employment before, or in addition to, the obligor's decision to start his own business. In those two cases, this Court determined that the evidence did not support a finding of willful and voluntary underemployment. *See Marcus,* 1998 WL 29645 at *3; *Beem*, 1996 WL 636491 at *2. In *Anderson v. Anderson*, No. 01A01-9704-CH-00186, 1998 WL 44947 (Tenn. Ct. App. Feb. 6, 1998) (no Tenn. R. App. P. 11 application filed), on the other hand, the obligor's job was not actually abolished and, rather than look for employment at a comparable salary, the obligor elected to start his own company. In that case, this Court affirmed a finding of

willful underemployment. *See Anderson*, 1998 WL 44947 at *4. Thus, the obligor's efforts to replace the lost salary can be determinative of the issue of voluntary underemployment.

This Court's reasoning in *Seaton v. Reynolds*, No. 02A01-9810-JV-00290, 1999 WL 20790 (Tenn. Ct. App. Jan. 20, 1999) (no Tenn. Ct. App. P. 11 application filed), is instructive to the case before us. In *Seaton*, the obligor parent's contract as an instructor at another university had not been renewed. He sought to reduce his child support obligation on the basis that he was starting a Ph.D. program and his income from the assistantship associated with that program would be significantly less than his previous salary. This Court sustained the trial court's finding that the obligor was voluntarily underemployed, stating:

> The record before us consists simply of Mr. Seaton's testimony that his contract at the University of Tennessee at Martin was not renewed and that he voluntarily admitted himself to the doctoral program at the University of Memphis. There is no evidence as to why his contract was not renewed, no evidence of his attempts to find other employment or the prospects of performing part-time employment while pursuing his doctorate.

*Id.* at *2.

This court also affirmed an implicit finding by the trial court[10] that the obligor spouse was willfully underemployed in *Hyden v. Hyden*, No. 02A01-9611-CH-00273, 1997 WL 593800 (Tenn. Ct. App. Sept. 25, 1997) (no Tenn. R. App. P. 11 application filed). In *Hyden*, the custodial parent sought an increase in the amount of child support, which had been initially set when the obligor parent, the father, was attending college and working only part-time. The father had since completed his undergraduate education, obtaining a B.A. He then entered seminary as a full-time student. At the hearing, the father testified that he hoped to complete his requirements in the seminary in three years. He had attempted to find a full-time pastoral position, but had been unsuccessful. At the time of the hearing, he held two part-time "summer jobs," earning $6.98 and $9.75 per hour. This Court affirmed the trial court's increase in child support, which the trial court based upon the obligor parent's potential earnings. The trial court calculated the amount of those potential earnings by multiplying 40 hours per week by the average hourly rate from the father's part-time jobs.

IV. Analysis of Mother's Employment Status

---

[10]"Although the trial court made no express determination that Father is willfully or voluntarily underemployed, we find the court's decision [to base the child support obligation on Father's potential income] to necessarily imply such a finding." *Hyden*, 1997 WL 593800 at *3.

In the case before us, the referee found that Mother's employment was involuntarily terminated in September 1994, a finding that was not changed by the trial court. The evidence in the record does not preponderate against that finding. However, as stated above, our inquiry does not stop there. The choices made by Mother after her involuntary termination are relevant to the issue of whether she is willfully and voluntarily underemployed.

Mother argues that she should have been allowed to exercise her right to make a fair choice as to her livelihood after the involuntary loss of her job, and to have her child support obligation reduced so that she could go back to school to improve her career potential. She cites the referee's initial finding that her decision to return to school was reasonable and that it was in the best interest of the children for her to be encouraged to complete a nursing degree. She also relies upon two cases from other states. Both cases deal with a non-custodial parent's efforts to reduce child support payments while attending school, but neither offers the support Mother claims.

In one case cited by Mother, *Overbey v. Overbey*, 698 So. 2d 811 (Fla. 1997), the Florida Supreme Court determined that, under Florida statutes, the proper question to be examined where an obligor parent leaves employment to attend school is "whether the temporary reduction [of child support] will be in the best interests of the recipients," specifically declining to apply the standard of voluntariness. *Overbey*, 698 So.2d at 814. Although Mother correctly quotes this holding, we read the Court's decision to be based on specific language in Florida statutes which does not appear in Tennessee's statutes. Moreover, when the *Overbey* court applied that "best interest" standard, the Court determined that the reduction was not in the children's best interest. *See id.* at 815. In *Overbey*, the non-custodial father, at the time of the divorce, agreed to pay $200 per week as child support. Five years later, the father left his job as a police officer earning $45,000 per year, to attend law school. He sought a reduction in child support based on his lower income. While the Florida Supreme Court considered whether a reduction in child support based on the father's planned career change was in the children's best interest, the Court found that it was not. The Court based its decision on the facts that the father's duty to support the children would completely terminate shortly after he finished school and that the father had no guarantee that upon graduation from law school he would earn even as much as he had previously. *See id.* The Court was not persuaded that the reduction in child support would "act to ensure the present and future economic well-being of the children." *Id.* The Court further stated:

> In fact, the children would be subsidizing the father's law school education through lower child support payments despite having no assurances of any future benefit. . . . From our view, while there may possibly be some voluntary long-term benefit, there clearly would be no legally enforceable benefit.

*Id.*

-8-

The same can be said of the case before us. In view of the ages of the children and the length of Mother's educational experience and plans, it could be argued that Mother expects her children to subsidize her education, with no legally enforceable benefit to them from her anticipated higher income in the future.[11]

In the second case, *Kelly v. Hougham*, 504 N.W.2d 440 (Wis. App. 1993), the Court of Appeals of Wisconsin found a reduction in child support appropriate where the father's income was to be reduced by his return to school to complete his work on a post-graduate degree. The court in *Hougham* appears to have been persuaded by the facts which showed an understanding between the parties during and after the marriage that the parties would alternate primary support of the family while the other pursued higher education. The father was a post-graduate student at the time of and during the first three years of the marriage. He left his program to work full-time. At the time of the divorce, the mother was attending law school. She graduated the following year and obtained full-time employment as an attorney. The same year, the father quit his job to resume his post-graduate program. The father took a part-time job and sought to pay child support on the basis of the reduced income. *See Hougham*, 504 N.W.2d at 445. The appellate court found that the father's reduction in income was expected to be temporary, and that the father was expected to pay substantially more child support in the future as a direct result of his post-graduate education. The parties were married only nine years, and we presume the two children were still fairly young when the parties divorced.

The Wisconsin court applied prior holdings establishing that "where reasonable, a payor spouse may sacrifice present earnings to develop his or her occupational opportunities." *Hougham*, 504 N.W.2d at 444. Based upon those holdings and the facts in the *Hougham* situation, the court concluded that the father's decision to complete his post-graduate degree did not unreasonably diminish his support obligation.

> We conclude that Hougham's decision to complete his education was a choice reasonably consistent with the advancement of his career and commensurate with his obligations to his children, even though his income will be temporarily reduced.

*Id.* at 442.

The facts of the *Hougham* case differ from the facts in the case before us. Unlike *Hougham*, the facts in this case offer no indication that Mother's decision to go to school

---

[11]Tenn. Code Ann. § 36-5-101(k) allows continuation beyond the age of majority of payments of any accumulated arrearage in the same amounts as the previously ordered child support payments. While Mother would remain obligated, under this statute, for any unpaid arrearage, no increase in the amount of support attributable to Mother's increased earnings could be ordered after the obligation to support is no longer enforceable.

corresponded with a substantial increase in Father's income or was consistent with the parties' agreement or expectations. Mother's reduction in earnings can hardly be considered "temporary," because she started school in January of 1995 and her earliest possible graduation would be in the spring of 2001. By the time of her eventual graduation, her two oldest children will be emancipated and will not benefit from any potential increase in child support which may otherwise result from Mother's anticipated higher income.

Another more significant distinction exists between the *Hougham* case and this case in that Tennessee courts have not adopted a standard such as that applied by the Wisconsin court. The parties have directed us to no Tennessee cases in which our courts have held that a non-custodial parent's child support obligation may be reduced to allow the obligor parent to "sacrifice present earnings to develop occupational opportunities," whether through new career choices or through further education. In a recent opinion, our Supreme Court determined that an obligor parent, the father in that case, was willfully and voluntarily underemployed. *See Brooks*, 992 S.W.2d at 406. In that case, the obligor father sold a successful gas station and convenience store, from which he earned $102,087 in 1994, in order to raise cattle, a venture which netted him no income. The father lived on interest income. The Court found that the father had liquidated his business to decrease both his income and his child support obligation. Without much discussion of the factors it considered, although it was obvious that the father had voluntarily ceased the activity that was producing the income upon which the support obligation was based, the Court found the father to be voluntarily underemployed, noting that although the father's earned income had dramatically decreased, his standard of living apparently had not changed. *See id.*

The dissent in *Brooks* argued for the adoption of additional factors to be considered in determining whether an obligor parent is willfully and voluntarily underemployed, including "whether the underemployment represents a bona fide career change that outweighs the adverse effect of the diminished income" and "whether a parent's underemployment is temporary and will ultimately lead to an increase in income."[12] *Brooks*, 992 S.W.2d at 409 (Birch, J., dissenting). While those factors are similar to the analysis used in *Hougham* and its predecessor

---

[12]In his dissent in *Brooks*, Justice Birch suggested:

> the following additional factors would be helpful to trial courts who must decide whether a parent is willfully and voluntarily underemployed: (1) the prevailing wage rates in the local area for various occupations; (2) the special skills and training possessed by the parent; (3) the availability of employment for which the parent is qualified; (4) whether the underemployment represents a bona fide career change that outweighs the adverse effect of the diminished income; and (5) whether a parent's underemployment is temporary and will ultimately lead to an increase in income.

*Brooks*, 992 S.W.2d at 409

Wisconsin cases, the majority in *Brooks* did not adopt them as factors to be considered by Tennessee courts in determining willful underemployment. This is not to say that we think Tennessee courts would never consider these or similar factors because, as we have stated, our courts often look at the reasonableness of the obligor parent's choices and efforts, especially when faced with involuntary loss of employment, in determining whether underemployment is willful or voluntary. *See Ralston*, 1991 WL 562719 at *3; *Narus*, 1998 WL 959839 at *2.

We decline, however, to adopt the position which Mother advances, that parents under child support obligations have a right to make employment, educational, or career choice decisions without regard to their support obligation.[13] We decline to recognize as public policy a preference for furthering one's education at the expense of supporting one's children. "It seems abundantly clear that since time immemorial it has been the public policy of this state that a parent is under a duty to support his [or her] children." *Witt v. Witt*, 929 S.W.2d 360, 362 (Tenn. Ct. App. 1996). Our child support laws are designed to prevent non-custodial parents from shirking responsibility for the children they willingly conceived. *See Nash v. Mulle*, 846 S.W.2d 803, 808 (Tenn. 1993). We agree that "the judicial system should look with the gravest disfavor upon parents who through their fault or design become underemployed in an effort to evade their legal, natural obligation to support their children." *Anderson v. Anderson*, No. 01A01-9603-CV-00118, 1996 WL 465242 at *1 (Tenn. Ct. App. Aug. 16, 1996) (no Tenn. R. App. P. application filed). Even where the choice of unemployment or underemployment is made for a reason other than avoidance or lessening of a support obligation, our courts are reluctant to allow parents to make such a voluntary choice when the effect is an inability to meet previously imposed obligations to support one's children. *See, e.g., Brooks*, 992 S.W.2d 403 (child support not reduced after father sold business and began cattle farming); *Anderson*, 1998 WL 44947 at *3 (child support not reduced after father accepted early retirement and started his own company); *McGaffic*, 1997 WL 772899 at *5 (child support not reduced after father accepted lower paying job that allowed him time off to drag race); *Seaton*, 1999 WL 20790 at *2 (child support not reduced upon finding father voluntarily entered a doctoral program after his prior contract was not renewed).

The trial court herein implicitly found that Mother was willfully and voluntarily unemployed or underemployed, based upon the facts and circumstances of this case. The evidence does not preponderate against that finding. Mother's original request for a reduction in child support, the denial of which she now appeals, was based upon her total lack of employment. There is no dispute that, after losing her employment in September 1994, Mother

---

[13]We are not persuaded by Mother's argument that "the example she sets for her three children . . . to obtain higher education will be extremely beneficial to them in intangible ways . . . potentially more valuable to them than the monetary support she could provide instead." While we agree that many actions by parents can benefit children by providing role models, raising expectations, and reinforcing the value of education and hard work, children are nonetheless entitled to tangible support. Furthermore, one might argue that the more valuable intangible benefit might lie in setting the example of living up to one's obligations.

chose to become a full-time student and cease income-producing employment altogether, entering college in January of 1995. Mother's position is not that she had no other choice, but that she had the right to make the choice to further her education. Although the referee found that Mother had attempted to find another job when she was terminated, that finding does not support a conclusion that no other employment was available which would allow her to meet her support obligations. Mother chose to attend college full-time rather than continue looking for new employment, accept a lower paying job, or work part-time while attending school. There is no evidence in the record to convince us this was her only choice or even a reasonable choice, in view of her support obligations and especially in view of the length of time she was going to spend in college and in further education to qualify for a new career.

## V. Analysis of Mother's Potential Income

If an obligor parent seeking a reduction of support on the basis of reduced income is found to be willfully and voluntarily unemployed or underemployed, then the court is required to use that parent's potential income, rather than actual income, in determining whether a significant variance exists between the amount of support originally ordered and the amount due under the guidelines at the new income level. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3) (1994). To determine the amount of potential income, the court must consider the obligor's educational level and/or previous work experience. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d)(1994); *Garfinkel,* 945 S.W.2d at 748.

The significant variance test requires that the court first determine the obligor's income to which the guidelines' formula will be applied.

> Determining the amount of the non-custodial parent's income is the most important element of proof in a proceeding to set child support. [citations omitted] This is the case both when setting initial support and when considering requests for modification of an existing support obligation. The non-custodial parent's income is, in fact, doubly important in a modification proceeding because the child support guidelines require the courts to examine the basis for the current support order and the non-custodial parent's current income.

*Turner*, 919 S.W.2d at 344.

Our courts have in some cases determined that the previous actual income of the obligor is an accurate measure of potential income. This approach is most applicable when an obligor parent has voluntarily discontinued his prior employment or other income-producing activity, because, without the conscious decision to cease the activity, the actual income would have continued. In *Brooks,* our Supreme Court found the earnings from the sold businesses to be the best evidence of the father's potential earnings and imputed income to him at the rate of his

-12-

highest earnings before the sale. *See Brooks,* 992 S.W.2d at 407; *See also Anderson,* 1998 WL 44947 at *3; *Seaton,* 1999 WL 20790 at *2. In that situation, a trial court's decision to deny a request to reduce child support has been determined to include an implicit, if not express, finding that the obligor's potential income has not decreased from the amount he or she was actually earning at the time of the last order setting the amount of support. *See Anderson,* 1998 WL 44947 at *5; *see also Riley v. Riley,* No. 03A01-9480-CH-000268, 1995 WL 311331 at *1 (Tenn. Ct. App. May 22, 1995) (no Tenn. R. App. P. 11 application filed).

In *Herrera v. Herrera,* 944 S.W.2d 379 (Tenn. Ct. App. 1996), this Court found that the trial court was required to make an express determination of the obligor's potential earnings before it could set the amount of child support and remanded for such purpose.[14] *See Herrera,* 944 S.W.2d at 387. While this holding was made in the context of an initial award of child support as part of the final divorce order, we think it has application where, as here, the obligor involuntarily loses employment. The obligor's ability to find employment at a comparable salary, or at any salary, is a relevant factual inquiry. The court must determine whether some or all of the unrealized earning capacity should be included as imputed income. *See also Hall v. Polk,* No. 01A01-9106-CV-00232, 1991 WL 226914 (Tenn. Ct. App. Nov. 6, 1991) (no Tenn. R. App. P. 11 application filed); *Ralston,* 1999 WL 562719 at *3.

An obligor's potential income is a question of fact which this court is unable to review absent sufficient evidence in the record. *See Renick v. Renick,* No. 01A01-9007-CV-00263, 1991 WL 99514 at *6 (Tenn. Ct. App. June 12, 1991) (permission to appeal denied Nov. 4, 1991). The trial court herein made no specific finding of Mother's potential income, simply finding that Mother was "able to pay" the amount of support previously ordered. The trial court's refusal to reduce the support obligation indicates that the court determined that Mother's potential income was at least the amount the guidelines reflect would be needed for the support originally set. The record before us contains no facts which would allow us to determine if the evidence preponderates against that implicit finding. The record tells us nothing about Mother's educational level at the time of the request for reduction and little about her prior work history. Similarly, we know nothing of the employment opportunities she found in her brief search for work or what opportunities might have been available. Thus, the record provides no basis for our independent determination of what Mother's potential income might be.[15] Accordingly, this

---

[14] In *Herrera,* it was undisputed that the father's income from his medical practice had significantly decreased, because, at least in part, of a reduction in referrals and Medicare reimbursements. The trial court stated it was setting child support based on the "true income capability" of the father, taking into consideration the factors which may have contributed to the decrease in his income, but it made no express determination of that potential income or explanation of the specific basis for its decision. *See id.* at 387.

[15] At the time of the last hearing herein, Mother was employed 37.5 hours per week on a schedule which allowed her to attend classes as a part-time student. Nothing in the trial court's order, however, indicates that the court found the income from this job, $926 per month, to be

-13-

case must be remanded for further fact finding. *See Herrera*, 944 S.W.2d at 394; *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995).

This case is remanded for further proceedings consistent with this opinion to determine Mother's potential income. Pending such further proceedings the amount of child support shall remain unmodified. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

---

Mother's potential income. Mother does not argue that her income at the time of the hearing should be used to determine the amount of support she should pay. Nor does she argue that this income is the best evidence of her potential earnings. Her argument is that she should be relieved of the support obligation on the basis of her lack of employment because she wants to be a full-time student. The amount of support required by the guidelines for Mother's income at her current job would be roughly the same as the currently- ordered amount, unless the court were again to make a downward deviation from the guidelines based on Mother's greater than usual visitation.