COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2020AP11**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2016FA778**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

JILL C. FLANSBURG,

    PETITIONER-APPELLANT,

  V.

WILLIAM LEROY MENCEL, JR.,

    RESPONDENT-RESPONDENT,

STATE OF WISCONSIN,

    INTERESTED PARTY-RESPONDENT.

        APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Reversed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Jill Flansburg appeals an order reducing the monthly child support obligation owed by her former husband, William Mencel, Jr. Flansburg argues the circuit court erred by reducing Mencel's child support obligation based upon a reduction in Mencel's income. She contends that Mencel's voluntary decision to reduce his income was unreasonable. We agree, and we therefore reverse the order reducing Mencel's monthly child support obligation.

## BACKGROUND

¶2    Mencel and Flansburg were married in November 1995 and divorced in August 2017. They have twin sons who were minors at the time of their divorce. As of that time, Mencel was employed as a truck driver at Frito-Lay earning about $80,000 per year. The parties stipulated that Mencel would pay Flansburg $1722.05 per month in child support. The parties also agreed that Mencel would have physical placement of the children every Monday and Thursday from 3:30 p.m. until 10:00 p.m. and on certain holidays, and that Flansburg would have placement at all other times.

¶3    Mencel quit his job at Frito-Lay in March 2018. He then began working full time at Gold Cross Ambulance as an advanced EMT. He earned $49,769.26 from Gold Cross during 2018. On March 22, 2018, Mencel filed a motion to modify child support based on his change in employment and resultant reduction in income. He voluntarily withdrew that motion, however, on April 26, 2018.

¶4     In addition to his employment at Gold Cross, Mencel also began working part time as a firefighter for the Village of Fox Crossing around Labor Day of 2018.  He earned $4029.59 from that employment during 2018.

¶5     Mencel voluntarily left Gold Cross in April 2019 because Gold Cross was unwilling to modify his work schedule to accommodate his desire to attend school to become a paramedic.  Mencel then took a job as an advanced EMT for Waushara County, earning $11.16 per hour.  That job allowed Mencel to work forty-eight-hour shifts on the weekends so that he could attend paramedic school during the week.  Mencel began paramedic school in August 2019 and expected to finish in May 2020.  Upon completion, he expected his compensation from Waushara County to increase to $15.69 per hour.

¶6     In April 2019, after leaving his job at Gold Cross, Mencel filed the motion to modify child support that is at issue in this appeal.  In an affidavit filed in support of his motion, Mencel asserted there had been a substantial change in circumstances since the entry of the parties' divorce judgment because he had "switched [his] primary place of employment, resulting in a reduction of [his] wages."  A family court commissioner denied Mencel's motion, concluding there was "no basis for a modification of child support" because Mencel's "voluntary reduction in employment was not reasonable."  The family court commissioner stated Mencel's "desire for a career change" was "not appropriate in light of his current obligation to support the minor children."

¶7     Mencel filed a motion for de novo review of the family court commissioner's decision.  In support of that motion, he filed an updated financial disclosure statement indicating that his yearly income from Waushara County was approximately $29,000.

¶8  A de novo hearing took place in October 2019. During the de novo hearing, Mencel testified he had left his job at Frito-Lay to increase his availability to have physical placement of his sons. He explained that his work schedule at Frito-Lay made it impossible for him to have overnight placement. He further testified that he "started trying to figure out a way to increase [his] availability" for physical placement around the holidays in 2017, and his attorney advised him "to try and find something … that would increase [his] availability so [he] could come back and try to get more custody."

¶9  Mencel also testified, however, that his change of employment from Frito-Lay to Gold Cross did not actually make him more available for physical placement because he was "working all the time." And while Mencel testified that he would be in a better position to exercise physical placement after he completed school in May 2020, it is undisputed that the parties' sons will turn eighteen on October 1, 2020—approximately four months after Mencel completes school.

¶10  In addition, it is undisputed that since leaving his job at Frito-Lay, Mencel has never filed a motion seeking to increase his physical placement of the children. Furthermore, Flansburg and the children moved to California during the spring of 2019. Mencel waived any objection to that move in a stipulation filed on March 8, 2019.[1]

¶11  The record also shows that in a letter to the circuit court dated February 25, 2019, the children's guardian ad litem (GAL) observed that there had been "little to no contact between these children and their father over the course of

---

[1] The parties also stipulated that after the children moved to California, they would have physical placement with Mencel for four consecutive weeks during the summer, as well as during their winter and spring breaks from school.

the post-divorce relationship." The GAL opined that there was "effectively no relationship between Mr. Mencel and his sons," and he also described their relationship as "nonexistent."

¶12 Following the de novo hearing, the circuit court granted Mencel's motion and reduced his child support obligation to $1180 per month. The court noted that although Flansburg argued Mencel's "decision … to switch career paths was both voluntary and unreasonable," Mencel "maintain[ed] that when he made the decision … he was doing so so he could free up more time to have placement with his kids." The court stated Mencel "obviously" made a voluntary decision "to change career paths," but whether that decision was reasonable was "up to … interpretation." The court continued:

> Seems [to] the Court that given the age of the children the most reasonable decision would be to stay with Frito-Lay, keep earning $80,000 per year. That being said, I can't necessarily question Mr. Mencel's motivation with regards to the time he made that decision to at least in part have more time with his children.
>
> …
>
> So I find his decision to change occupations was voluntarily made but under law I can't necessarily find it was an unreasonable decision.

¶13 The circuit court then determined that it was appropriate to set Mencel's monthly child support obligation based on the amount of income he anticipated earning after he completed his paramedic training in May 2020, rather than his actual income at the time of the hearing. The court explained, "I'm not going to give him the benefit of what he's making now because I think he does need to realize that his decision was his decision and it was, I think, a poor decision. So I'm going to give him really a penalty for making that decision." Flansburg now appeals, arguing the court erred by reducing Mencel's child support obligation.

**DISCUSSION**

¶14   A circuit court may modify the amount of a party's child support obligation "only upon a finding of a substantial change in circumstances." WIS. STAT. § 767.59(1f)(a) (2017-18). In support of his motion to modify child support, Mencel asserted that his change of employment and resultant decrease in income constituted a substantial change in circumstances. On appeal, Flansburg does not dispute that a substantial change in circumstances occurred. She argues, however, that the court should not have reduced Mencel's child support obligation because his voluntary decision to reduce his income was "unreasonable in light of his obligations to his children for child support."

¶15   When considering a motion to modify child support, a circuit court may use a parent's earning capacity to calculate his or her child support obligation, rather than the parent's actual income, only if the court concludes the parent has been "shirking." *Chen v. Warner*, 2005 WI 55, ¶20, 280 Wis. 2d 344, 695 N.W.2d 758. To conclude that a parent is shirking, a court need not find that the parent deliberately reduced his or her earnings to avoid support obligations or to gain an advantage over the other party. *Id.* Instead, the court need only find that the parent's decision to reduce or forgo income was both voluntary and unreasonable under the circumstances. *Id.*

¶16   In this case, Mencel's child support obligation was originally set based on his income of $80,000 per year at Frito-Lay. Mencel moved to modify child support after he began working as an advanced EMT for Waushara County, where he earned approximately $29,000 per year. It is undisputed that Mencel voluntarily decided to change careers and accept a job where he earned substantially

less than his income at Frito-Lay. The issue is whether his decision to reduce his income was reasonable under the circumstances.

¶17 The reasonableness of a parent's decision to forgo income presents a question of law that we review independently. *Id.*, ¶¶41, 77. Nevertheless, because the reasonableness determination is closely intertwined with factual findings, we give appropriate deference to the circuit court's decision, taking care not to usurp its role as fact finder. *Id.*, ¶¶41, 43-44, 77. "The burden of showing reasonableness is on the party who reduces or forgoes income. That party has the burden of justifying his or her decision." *Chen v. Warner*, 2004 WI App 112, ¶14, 274 Wis. 2d 443, 683 N.W.2d 468, *aff'd*, 2005 WI 55, 280 Wis. 2d 344, 695 N.W.2d 758; *see also Kelly v. Hougham*, 178 Wis. 2d 546, 556, 504 N.W.2d 440 (Ct. App. 1993) (stating a child support payor was required to "justify" his decision to forgo income "in light of his obligations to his children").

¶18 When assessing the reasonableness of a parent's employment decision in *Chen*, our supreme court stated that a divorced parent may voluntarily terminate his or her employment "but may not do so if the conduct inures to the detriment of child support." *Chen*, 280 Wis. 2d 344, ¶46. Stated differently, "[t]here is a limit to the unemployment or underemployment of a parent when the other parent 'is presented the bill for the financial consequences.'" *Id.* (footnote omitted). Thus, when considering whether a parent's voluntary decision to reduce his or her income was reasonable, we must "balance[] the needs of the parents and the needs of the child (both financial and otherwise, like child care) and the ability of both parents to pay child support." *Id.*, ¶25.

¶19 Here, Mencel has failed to meet his burden to show that, as of the time he moved to modify child support, it was reasonable for him to remain employed at

a job where he earned only about $29,000 per year, which was far less than his previous income of $80,000 per year. The parties concentrate their arguments on whether it was reasonable for Mencel to leave his job at Frito-Lay. Mencel testified he left that job so that he would be more available to have physical placement of the parties' sons. The circuit court stated it could not "necessarily question Mr. Mencel's motivation with regards to the time he made that decision to at least in part have more time with his children."

¶20 The issue for purposes of this of appeal, however, is not whether it was reasonable for Mencel to leave his job at Frito-Lay in the first instance. Instead, the issue is whether, at the time he moved to modify child support, it was reasonable for him to continue working at a job where he received significantly less pay than he earned at the time his support obligation was established. We conclude it was not.

¶21 While Mencel may have been motivated to leave his job at Frito-Lay by a desire to increase his availability to exercise physical placement, the record that existed at the time of his motion hearing shows that he made no real effort to increase his physical placement after leaving that employment. Notably, Mencel never filed a motion to increase his physical placement of the children at any point after leaving Frito-Lay. In addition, Mencel testified that after he left Frito-Lay, he was "working all the time" and thus was not actually more available to exercise placement.

¶22 Furthermore, although Mencel testified he would be in a better position to exercise physical placement after he completed paramedic school in May 2020, the parties' sons will turn eighteen on October 1, 2020—only about four months after Mencel expected to complete his schooling. In any event, the children

moved to California with Flansburg during the spring of 2019. Mencel waived any objection to that move, and he did so one month before he moved to modify child support. Consequently, at the time he filed his motion, Mencel was aware that, regardless of his availability to exercise placement, there was no real prospect of significantly increasing his physical placement of the children.

¶23 Finally, the record shows that Mencel had little to no relationship with the children at the time he moved to reduce his child support obligation. In February 2019, the children's GAL described Mencel's relationship with them as "nonexistent" and noted there had been "little to no contact" between Mencel and the children "over the course of the post-divorce relationship."

¶24 The record therefore shows that after leaving his job at Frito-Lay, Mencel: (1) made no effort to increase his physical placement of the children; (2) would not actually have been more available to exercise physical placement until about four months before the children turned eighteen; (3) did not oppose the children's move to California; and (4) had little or no relationship with the children following the parties' divorce. Under these circumstances, although, as the circuit court found, it may initially have been reasonable for Mencel to leave his job at Frito-Lay to increase his availability to exercise physical placement of the children, it is clear that motivation no longer existed at the time he moved to modify child support. As such, we cannot conclude that, as of that time, it was reasonable for Mencel to remain in a job where he earned only $29,000 per year, as compared to his prior income of $80,000 per year.

¶25 Moreover, as noted above, when assessing the reasonableness of a parent's employment decision, we must balance the parents' needs, the children's needs, and the ability of both parents to pay child support. *Chen*, 280

Wis. 2d 344, ¶25. In support of his motion to modify child support, Mencel provided no evidence showing that his reduced support obligation would meet the children's needs, nor any evidence about Flansburg's ability to provide for the children. Thus, Mencel not only failed to justify his decision in light of his claimed desire to increase his availability for physical placement, but he also failed to show that any decreased support would meet the children's or Flansburg's needs. Accordingly, the only factor for us to balance against Mencel's loss of income is his stated motivation for changing his employment, which we have already determined no longer existed at the time he moved to modify child support.

¶26 Because Mencel's decision to reduce his income was both voluntary and unreasonable, we agree with Flansburg that Mencel was "shirking" at the time he moved to modify child support. As a result, Mencel's child support obligation should have been based on his earning capacity of $80,000 per year, rather than on his actual income at the time he filed his motion (as Mencel requested) or on his anticipated income upon finishing paramedic school (as the circuit court ordered). We therefore reverse the court's order granting Mencel's motion to modify child support.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).